LOGUIDICE, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 16—February 9, 1915.*

*Criminal law and practice: Trial: Dilatory motions: Threats of bodily harm: Evidence.*

1. The making of dilatory motions upon a criminal trial is disapproved.
2. The evidence in this case is *held* to sustain a conviction of threatening to do great bodily harm to the complaining witness.

ERROR to review a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Plaintiff in error was charged with having committed a serious criminal offense. There was an examination and he was held to bail for trial. In due course, the cause reached the circuit court. The prosecuting attorney supposing that the scope of the examination disclosed probability of guilt on several grounds informed against the accused thus in substance:

1. Defendant at the time and place mentioned maliciously mutilated the lips of Francisca D'Amore.

2. Defendant at such time and place maliciously procured the lips of said D'Amore to be mutilated.

3. Defendant at a time and place mentioned threatened to do said D'Amore great bodily harm.

4. Defendant at a stated time and place assaulted said D'Amore with intent to do her great bodily harm.

There were various motions and proceedings in the municipal court of Rock county where the cause was first brought to a hearing and later in the circuit court for such county, resulting in the accused being, in due form, tried in the latter court on the second and third counts. He was found guilty upon the third and sentence was passed and judgment rendered accordingly.

For the plaintiff in error there was a brief by *Woolsey & Arnold* and *Jeffris, Mouat, Oestreich & Avery,* and oral argument by *T. D. Woolsey* and *O. A. Oestreich.*

For the defendant in error there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, attorneys, and *Stanley G. Dunwiddie,* district attorney, of counsel, and oral argument by *Mr. Messerschmidt* and *Mr. Dunwiddie.*

MARSHALL, J.    Various complaints are made by counsel on the part of plaintiff in error, but, we must confess, after carefully examining the record, there is very little which merits more than passing notice.

Some six distinct motions were made on behalf of the accused before the matter came down to the point of impaneling the jury.    Adverse rulings on each motion were excepted to and we are asked to review them in detail, besides two motions made on the trial, one to direct a verdict in favor of the accused and one to set aside the verdict and grant a new trial.

Five of the motions made before the jury were impaneled we are constrained to class as dilatory.    Nothing can be gained by such motions.    They may vex the court, delay the administration of justice, increase the expenses of the trial to the defendant and the public as well, and take from the merited credit of our system of criminal law and practice; but, rarely, can counsel expect to reap any advantage for his client from them, especially in this court.    They are the mere chaff of a trial.    The spirit of modern practice under the liberalizing influence of a more comprehensive conception of the purposes of the Code,—which looks only to substantials and is quite blind to mere inconsequentials, puts them all aside.    He serves his client best and dignifies the profession most who proceeds most directly to lay the real merits of the cause before the court and jury and appeals to their judgment, depending upon the justice of the case.

What has been said is not intended to cast discredit upon

the learned counsel who presented here the case of plaintiff in error. It is said to inculcate knowledge of a condition to the end that the industry and ability devoted to technicalities and inconsequentials may be conserved for those things which count.

With what has been said in view, it will be understood that matters suggested in the briefs of counsel to which no reply is made are deemed not to involve error at all, or none which is prejudicial.

There was no question on the evidence but what the girl mentioned in the information was assaulted and mutilated by some one in a most brutal manner. The controverted questions were, whether plaintiff in error did it, or caused it to be done. If either, he was guilty of some one of the charges contained in the information.

There was ample evidence to warrant the jury in believing that he, in a revengeful mood, because of having been rejected as a suitor for the hand of the girl, had, to his perverted mind, a motive for abusing her. There was an absence of evidence that any one else had such motive. There was ample evidence to warrant a jury in believing that the accused had on two occasions threatened to do just what was done. It was a very singular thing,—the mutilation of a young girl's face. A man of the temperament which the jury may fairly have believed the accused had, with mind perverted by failure to obtain favor with a girl he was almost madly pursuing with matrimonial intention and passionate desire, might threaten to do such a brutal thing as to destroy her attractiveness in the eyes of any rival. He was the only one so circumstanced. Just what he threatened would occur did happen and with substantially the characterizing incidents predicted.

Those and other circumstances not only strongly corroborate the testimony of the girl as to the accused having threatened her, as charged in the information, but point to him as having procured the threat to be executed. In the absence of anything like a satisfactory explanation of such circum-

stances, it seems the jury were warranted in concluding that they were not consistent with any other reasonable theory than guilt of the accused; at least of having maliciously and feloniously threatened to injure the girl.

The greatest weakness there is in the case lies in the acquittal upon the charge of procuring some one to mutilate the face of the girl. Probably, if the jury had appreciated the probative power of circumstantial evidence it might have been much worse for the accused. On the whole, he was fortunate in being treated as tenderly by the jury as he was.

Counsel go too far in suggesting that "there was not a shred of testimony to connect the accused with the assault." That argument was, doubtless, pressed very successfully upon the jury. There is no stronger proof than circumstantial evidence where all the incidents are satisfactorily established and are consistent with the happening of some particular event and inconsistent with any other reasonable theory than that they tell the correct story of how such event happened to take place. It is much easier for a witness of an affair to be mistaken or one to falsify than for circumstances to mislead, which are admitted or established, and so converge upon a single point as to exclude any other reasonable view than that they point truly.

We need not say more, except that we have not overlooked the claim of an *alibi*. The jury were well warranted in disbelieving the evidence on that point. Neither have we overlooked the claim that there had been some bad blood between the girl, her mother on the one side, and the accused and his people on the other. The jury weighed that evidence and found it wanting. His testimony was discredited in several ways, as the jury might well have viewed it. He said he never wanted to marry the girl, and in the same breath admitted that he sent some one to negotiate in respect to marrying her and that he would do so if her mother would not object. Again, he said he was never mad at the girl, and, in the same connection, testified that he had had serious trouble

with her and her family.   In other ways his testimony was discredited.   Considering all the circumstances, the jury, doubtless, disbelieved him and we cannot say they were not warranted in doing so.

It is thought that none of the suggestions of counsel have escaped our attention, and that all have been referred to, specially or generally, which are at all meritorious.

*By the Court.*—Judgment affirmed.