WITTIG, Plaintiff in error, vs. THE STATE, Defendant in error.

*June 4—June 20, 1940.*

*G. F. Clifford* of Green Bay, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, *Cletus G. Chadek,* district attorney of Brown county, and *Richard J. Farrell,* assistant district attorney, and oral argument by *Mr. Chadek* and *Mr. Platz.*

ROSENBERRY, C. J.   In view of the conclusion which the court has reached in this case, it would serve no useful purpose to state the facts of this case in great detail.   Most of the facts are undisputed and all of the material facts might have been established very much more concisely than they were.

The defendant was a middle-aged woman who had been four times married.   Miss McAllister was a young woman twenty-four years of age, and had lived with the defendant for more than a year.   The defendant had been engaged in running a tavern, but had sold out and was about to engage in the tavern business with one Charles Oakes, formerly a

resident of Canada. She had been consulted in regard to the plans of the tavern which Mr. Oakes built, had purchased a part of the equipment, and was intending to leave for Milwaukee on the night of June 13, 1939, to look at a piano, which she thought of purchasing. Mr. Oakes was removing to Green Bay, and it had been suggested that he and his wife, who were elderly people, Mr. Oakes being seventy or seventy-one years of age, might live with the defendant until the tavern was completed. This was not satisfactory to the defendant, and for the purpose of preventing the Oakes from coming to her home she proceeded to dismantle the same and to announce her intention to rent the place. She thereupon proceeded to send out of the house a large amount of material. The property sent away included an oriental rug valued somewhere between $600 and $1,000, a lot of laundry, her furs were stored, and other things sent to the dry cleaners, all of which was done without any attempt whatever at secrecy. The last laundry wagon which came for laundry came about 4 o'clock, and about 4:15 the defendant and Miss McAllister left for Milwaukee, stopping at De Pere on the way. They arrived in Milwaukee about 9:30 p. m., June 13, 1939, registered at the Plankinton Hotel, where they remained for two days, frequenting night clubs and other places of entertainment and amusement in the meantime. June 13th was on Tuesday. On the following day, about 1:30 a. m., there was an explosion in the home owned by the defendant at 402 Martin street. The house was a one-story structure with a small attic and including a storage room in the rear, was about sixty feet in length. The main part of the building was approximately twenty-four feet in width. There was a dining room next to the street, to the rear of that a bedroom and bath and a living room; back of the living room was the kitchen, back of the bath was a bedroom, and in the rear was a sleeping room with two storage rooms. Access to the attic was had by way of a small opening without steps, and could only be reached by means of a stepladder.

The fire department reached the premises within four or five minutes after the alarm. The fire was extinguished, and it was discovered that extensive and thorough preparation had been made for the rapid burning of the building. Gasoline and kerosene had been used to such an extent that there was a violent explosion which bulged the sides of the house. Streamers of oil-soaked cloth led from the kitchen to the bedroom and were hung in different places throughout the premises. Streamers of papers soaked in kerosene were placed in the attic, an almost inaccessible place, and when the firemen arrived the odor of gasoline and kerosene permeated the premises. In the basement oil-soaked papers were stuffed between joists and scattered about. These bore comparatively recent dates and had on them the name of Miss McAllister.

The defendant carried insurance on the house in the sum of $2,500, which was made payable to the holder of a $2,000 mortgage under a subrogation clause. The building and lot were worth $3,600 to $4,000. The defendant, after her divorce from her fourth husband on April 7, 1936, had considerable property, most of which she had spent, and what means she had was invested in the house and lot in question. It appears that the davenport, oriental rug, and stool which were the most valuable articles, were left at the cleaners in the name of Betty McAllister instead of that of the defendant. When the firemen arrived upon the premises, the remark was made that the house had been stripped.

At the time the defendant left for Milwaukee she had every expectation of going forward with the deal with Mr. Oakes by which she was to become manager and operator of the new tavern. After the fire, circumstances were such that she could no longer get a liquor license, and she withdrew from the transaction. She had in the meantime spent considerable money for personal expenses, and bought a car out

of the money furnished by Mr. Oakes. This matter had apparently caused no permanent rupture. He knew about the purchase and continued with the arrangements.

While no great weight can be attached to the circumstances, it appears from the evidence that shortly after the explosion two young people saw a man running away from the premises, but they were unable to identify him or furnish any description. Attempt was made on the trial to prove that the defendant had been threatened by a man by the name of Barth, but the effort came to nothing as he was not connected with the fire by any evidence offered and received in the case.

The house was apparently worth more than the amount for which it was insured. The state contends that the defendant was hard up and caused the fire in order to realize on the insurance. No attempt was made to dispute the fact that the defendant and Miss McAllister left the premises almost immediately after the last laundryman called, nor is there any claim they returned to Green Bay or did anything but proceed to Milwaukee where they remained for two days as they had planned to do.

The inspection of the premises by the firemen did not disclose the manner in which the fire was set. It was concededly of incendiary origin. Preparation for the fire must have been made by some person quite familiar with the premises. The jury, as already stated, found both defendants guilty. The trial court quite properly concluded that the verdict finding Betty McAllister guilty could not be sustained under the evidence. There is scarcely a bit of evidence relating to the occurrences on June 13th or the connection of the defendant with them that applies to the defendant that does not apply equally well to Betty McAllister with the single exception of motive. We have carefully examined the evidence upon this point, and it is considered that the evidence with respect to motive is not sufficient in connection with the remainder of

the evidence to warrant the jury in finding defendant guilty beyond a reasonable doubt. She at the very best could profit very little, if at all, by the destruction of the property. Two thousand dollars of the $2,500 insurance would go to the holder of the mortgage. Any attempt to collect on account of personal property removed from the premises would have undoubtedly disclosed the fact that much of the property had been removed from the house. The business was transacted over the telephone, deliverymen called for the goods. One or two places were called and because they could not come promptly other parties were called. There was not the slightest attempt at secrecy. At best she could hope to collect only the value of the personal property remaining on the premises if the fire totally destroyed the premises. The fire department was located in the same block as defendant's house.

There is no doubt that the jury was very much influenced by the fact that the defendant and her companion did not bear a good reputation in the community in which they lived. Upon the trial the district attorney improperly asked certain insinuating questions which no doubt had the effect of producing an unfavorable attitude of the jury toward the defendants and influenced its verdict.

It is considered under all of the facts that the trial court accorded too much weight to the proof respecting motive. Mere proof of motive does not of itself establish guilt nor does proof of want of motive establish innocence. In *Cupps v. State* (1904), 120 Wis. 504, 518, 97 N. W. 210, 98 N. W. 546, the court said:

"Presence or absence of motive in any case, as indicated, is but a mere evidentiary circumstance to be given just such weight by the jury as they deem the same entitled to under all the circumstances."

The evidence at best does not establish a strong motive. She could only recover the value of the personal property by proof of loss. This under the circumstances would have been

limited to the property within the building. In the building itself she had not more than a $500 interest in the insurance. The property was apparently worth from $3,500 to $4,000. The valuation of the lot does not appear, but she could gain very little, if anything, by the destruction of the building except that she would have the mortgage paid and her personal obligation extinguished. Proof of motive, especially where a strong predisposition to do the act complained of is established, may no doubt resolve doubts against the accused. There being nothing in the evidence to connect the defendant with the acts complained of, proof of motive alone is not sufficient to sustain the verdict. The proof failed to connect the defendant with the occurrence to the same extent that it failed to connect Miss McAllister with it. Disregarding proof of motive, every act of the defendant relating to the offense is as consistent with her innocence as with her guilt. While a conviction may rest upon circumstantial evidence, in order to sustain a conviction it must be of such probative force as to enable the jury to say that the defendant is guilty beyond a reasonable doubt.

"There is no stronger proof than circumstantial evidence where all the incidents are satisfactorily established and are consistent with the happening of some particular event *and inconsistent with any other reasonable theory than that they tell the correct story of how such event happened to take place.*" *Loguidice v. State* (1915), 160 Wis. 17, 20, 150 N. W. 980. See also 20 Am. Jur. p. 1069, § 1217, and cases cited.

Upon the whole record we cannot say that the proof is sufficient to enable the jury to find that the defendant was guilty beyond a reasonable doubt.

*By the Court.*—Judgment is reversed, and cause remanded with directions to discharge the defendant.

MARTIN, J., took no part.