State ex rel. Marachowsky, Plaintiff in error, vs. Kerl, Sheriff, Defendant in error.*

*December 8, 1950—January 9, 1951.*

---

* Motion for rehearing denied, without costs, on March 6, 1951.

For the plaintiff in error there was a brief by *Rubin & Ruppa* of Milwaukee, and *Francis P. Mayo* of Madison, attorneys, and *William B. Rubin* of Milwaukee of counsel, and oral argument by *Mr. William B. Rubin* and *Mr. Mayo*.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *Robert W. Arthur,* district attorney of Dane county, and oral argument by *Mr. Platz.*

GEHL, J. It is the contention of the defendant that no verified income-tax return was filed. The facts are stated in *State ex rel. Arthur v. Proctor* (1949), 255 Wis. 355, 356, 38 N. W. (2d) 505:

"As the evidence was taken at the hearing, it appeared that the return was signed at the home of the accused in Portage, Columbia county, Wisconsin, and was not sworn to before any notary at that time. The return was then mailed to a certified public accountant retained by the Portage Store Company in Madison. Counsel for the accused then stipulated that the return was 'duly filed' in the state income-tax office at Madison, Wisconsin. The return as filed appeared to have been notarized by a notary public for Dane county."

The state relies upon the certificate and seal of the notary as sufficient evidence that the verification of the tax return was properly sworn to before the notary public. The only evidence to the contrary is the testimony of Bess Marachowsky, wife of the defendant.

Stamps, dated February 22, 1948, of the department of taxation indicating its receipt, appear on the return. Beyond any question, the return was filed as a verified return as required by law, and the amount of the tax computed thereon was paid coincidentally with the filing of the return. Defendant relied upon the verification of the statement as a compliance with the law when it was advantageous for him to do so, and he cannot now repudiate the statement on the ground that the verification was not in fact made as required by law. An *estoppel* is the answer to such a claim.

The main issue in this case is whether there is sufficient evidence to establish probable cause that the defendant knowingly made a false return with intent to evade the assessment of income taxes against the corporation.

It is well established in this state that the evidence at a preliminary hearing need not be sufficient to prove the charge against the defendant beyond a reasonable doubt. The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence. *State v. Whatley* (1933), 210 Wis. 157, 160, 245 N. W. 93; *Chambers v. State* (1940), 235 Wis. 7, 9, 10, 291 N. W. 772.

The defendant, Solomon Marachowsky, owns the bulk of the stock (except for the necessary qualifying shares of

other directors) in the Portage Store Company. He is the president of the corporation and, as such, filed Exhibit 1, the income-tax return heretofore referred to. On the second page of the income-tax return there appears under "gross income" the following item:

"1.  Gross sales, cash, and credit less returns
     and allowances..................$682,818.01"

That figure, as well as all other figures in which the gross sales enter into the computation, are alleged by the state to be false and fraudulent. Exhibit 3, a computation made by the auditor of the tax department on February 23, 1948, shows that the corporation made gross sales in the amount of $41,800 which are not recorded in the books of the corporation and which are not reflected in the tax return.

Romelle Hasse testified: During the time covered by Exhibit 3 (July 5, 1946, through December 23, 1946), she was employed as a cashier by the Portage Store Company. It was her duty to collect the daily receipts from the cash registers each day and from these and certain slips showing money paid out, to compute the gross sales of each department. She did this on slips of paper called "daily register forms." After she completed that computation, the figures were transferred to a "daily statement" sheet and at the end of the week these totals were entered on what was known as a "weekly report." Both the daily and weekly statements should reflect the sales made by each department in the store. Mrs. Bernadine Marachowsky entered in the journal the daily sales figures from the daily statement.

Mrs. Hasse from time to time set aside part of the cash receipts in a desk drawer and entered on the daily statement a sales figure for various departments in the store substantially less than the true figure as reflected in her computation on the cash-register slip. It was her duty to prepare and make the bank deposits. On those occasions when she en-

tered a smaller amount than the true figure on the daily statement, she withheld from the bank deposit an amount equal to the difference between the true amount and the false figure entered on the daily statement. The money withheld was changed into large bills and placed in a box in a drawer in the desk which she used. The key to this desk was kept under a lamp on her desk. From time to time the money thus set aside disappeared from the desk.

Mrs. Hasse expressly denied that she ever took any of the money thus set aside or that she profited personally from the scheme.

On February 23, 1948, the tax-department auditor went to the office of the Portage Store Company to commence an income-tax audit. He asked Jule Marachowsky, a brother of the defendant and an employee at the store, for certain records. These were supplied for examination. The defendant at that time was in Virginia and Jule testified that on that day he was taking Sol's place and he would say he was the "head man" on that day. On February 26, 1948, the auditor returned to continue his audit. A number of records which he had seen on his first visit had disappeared. Mrs. Hasse quit in September, 1947, and was no longer employed at the store.

The auditor testified that on February 23d, Jule Marachowsky showed him a book, described as a "black book" kept by someone in the Portage Store Company for recording the daily sales of each department, by recording there the cash-register readings at the beginning of the day, cash-register readings at the end of the day, the difference and adjustments for paid-outs and register errors, in order to arrive at the cash receipts for the day. He was also shown a box of cash-register reconciliations for each store operating day of the years which he was examining. He was shown and examined the daily statements which were represented to him by Jule and Bernadine Marachowsky as records of

the Portage Store Company, and are a part of the deposition of Romelle Hasse.

When he finished work on that day, he took with him Exhibit C which is the cash-register reconciliation slips prepared on December 14, 1946, by Romelle Hasse, as testified by her. When he left he turned over to Jule the records he had been looking at and told him to preserve them and also to procure for him certain records of the same type for other years.

On February 26th he looked for the "black-book" and the daily cash-register reconciliations in which he was interested but was unable to find them. On March 3d defendant had returned from Virginia and the auditor had some conversation with him. A search was made at that time for the material referred to, but they were unable to find it. The defendant mentioned that with thirty or thirty-five employees in the store it is possible that someone could have thrown it away.

The first column of Exhibit 3 shows "Net cash per register check-out slip." The figures in that column were obtained by the auditor from the "black book" and were verified by figures found in the cash-register reconciliation slips. The second column shows "Net cash per daily sales record." On each of the dates, the amount of the second column is substantially less than that of the first column. The difference is shown in the third column, the total of which is $41,800.

Exhibit C is the only available batch of cash-register reconciliation slips in possession of the state and is the entry of December 14, 1946, on Exhibit 3. There is a discrepancy of $3,000 on that date.

There are in evidence two daily statement sheets for August 9, 1946 (also on Exhibit 3), disclosing a difference of $500. The cash journal of the Portage Store Company

kept in the handwriting of Bernadine Marachowsky shows an alteration of amounts on that date in the sum of $500.

The auditor testified that on the basis of his examination and audit, the true figures, as shown in column 1 of Exhibit 3, were never reflected in the books of account of the 'Portage Store Company and were therefore not reflected in the income-tax return (Exhibit 1) which is the subject of this prosecution.

Mrs. Dorothy Johnson testified that she was employed by the Portage Store Company from September, 1945, to March, 1948, and she succeeded Mrs. Hasse as cashier in September, 1947. While she was cashier it was the custom to give to the heads of departments in the store daily slips showing sales for the corresponding day of the previous year, and it was her duty to prepare these slips. To prepare these it was necessary for her to go to the daily statement sheet and also to examine a separate record kept in a different book. This book contained certain figures which on certain days it was necessary for her to add to the official figures taken from the daily statement. It was in the cashier's desk at the time she took over the work as cashier, and when she left it was left in the desk. She testified that during the time she was cashier Bernadine Marachowsky knew of the existence of that book. She received instructions from Mrs. Hasse about adding the additional figures to the amounts shown by the daily statements. The evidence indicates that this is a different book than the one referred to by the auditor.

On cross-examination Mrs. Hasse testified as follows with reference to her practice of falsifying figures and holding money out of the deposit, which money she put in a box in the desk drawer:

"*Q.* So far as you personally know, nobody knew you did it, except your husband and your father in law? *A.* Well, hints came in the office other people knew I was doing it.

"*Q.* How do you know they knew you were doing it, was that a guess on your part? *A.* No.

"*Q.* You didn't tell anybody? *A.* No, but people knew it. It got rumored around.

"*Q.* It got rumored around? *A.* Yes, that is right.

"*Q.* Just shortly before you quit? *A.* No, it was before that."

Testimony was offered that after the John Doe proceeding in this matter was commenced May 19, 1948, a detective employed by the defendant searched the cashier's desk and found under a false bottom a box containing $9,600. About eight months had elapsed between the time Mrs. Hasse quit work at the store and when the money was allegedly found.

The following affidavit appears in the record (Exhibit H) :

"Mrs. Romelle Hasse being first duly sworn on oath deposes and says: I was employed by the Portage Store Company. During that time I set aside money and put it in a box and I kept it in my desk drawer. This money was not taken out of the Portage store by me or anyone else to my knowledge. I never gave any money to an employee or officer of the Portage Store Company. Therefore, the money should be there if no one has taken it. While it has been inferred that I took money while employed, the money that I set aside was left in the box in my desk drawer when I discontinued my services at the Portage Store Company, and I never received any money from it in any manner other than my regular salary."

Another document (Exhibit I), appears as follows:

"May 26th, 1948. For and in consideration of the assistance and co-operation hereinafter set out, I, the undersigned, do hereby for myself individually and for the Portage Store Company, Inc., do forever release and discharge Mrs. Romelle Hasse from any and all claims of any kind or nature by reason of her having been employed by the undersigned. This release is given this date by reason of the co-operation of the said Mrs. Hasse in locating certain misplaced money in the Portage Store Company office and the undersigned for himself individually and for the Portage Store Company

does hereby state that they have at no time and do not now make any claim of any kind against the said Mrs. Hasse.

Portage Store Company, Inc.
"/s/ Sol Marachowsky, Pres.
"/s/ Sol. Marachowsky."

There is no direct evidence that the defendant knew that the money was being withheld and placed in a desk by Mrs. Hasse, nor were any eyewitnesses produced who saw him extract the money from the desk. However, the court is of the opinion that there was sufficient competent evidence presented at the hearing that warranted the magistrate finding that there was probable cause to believe the defendant guilty thereof.

As stated before, except for the necessary qualifying shares of other directors, (wife and brother Dave), this is a one-man corporation and is not too large a business concern. The defendant devoted his full time to the affairs of the company and was assisted by relatives. Substantial sums of money disappeared over a period of at least six months. If it were embezzlement, the defendant or other members of his family were in close contact with the operation of the business and in a position to discover it. The disappearance of certain records upon which the auditor computed that $41,800 was withdrawn and not accounted for in the income-tax return, the failure to prosecute Mrs. Hasse for embezzlement upon the discovery of $9,600 in the desk formerly occupied by her, and a full release (Exhibit I) of all claims against her while employed by the defendant, are circumstances from which proper inferences may be made to warrant the magistrate finding that there was probable cause to believe the defendant guilty of the offense charged.

The state's evidence is in conflict on certain points, but we have the rule that when the evidence of different witnesses introduced by the same party is contradictory, the trier has a right to believe and accept that evidence which it finds to be most credible under all the circumstances. *O'Neil v.*

*State* (1941), 237 Wis. 391, 399, 296 N. W. 96; *Mandella v. State* (1947), 251 Wis. 502, 514, 29 N. W. (2d) 723.

The circumstantial evidence shows probable cause to believe defendant knew the tax return to be false and intended to evade the payment of taxes.

Exhibit 3 was offered in evidence as secondary evidence of the contents of the "black book" and the cash-register reconciliation slips, after the state first proved that those documents were missing and could not be found, through no fault of the state. Defendant now objects to the competency of the exhibit on the ground that the "black book" would not itself have been admissible in evidence on the showing which the state made. When the exhibit was originally offered in the superior court, defendant objected to it as being incompetent, no proper foundation laid, and no affirmative evidence showing it is lost or missing, and was overruled.

The details relating to Exhibit 3 were set forth earlier in this opinion, and we find that said exhibit is admissible. 8 Callaghan's Wis. Dig., Evidence, p. 466, secs. 647, 648. There was also a sufficient showing that the "black book" itself would be admissible in evidence if it could be produced. 7 Wigmore, Evidence (3d ed.), p. 574, sec. 2132 (1), and p. 632, sec. 2160 (3).

*By the Court.*—Judgment affirmed.

MARTIN, J., took no part.