STATE EX REL. HUSER, Petitioner-Appellant, v. RASMUS-
SEN, Sheriff of Green Lake County, Respondent.†

*No. 76–759. Submitted on briefs May 3, 1978.—
Decided June 30, 1978.*
(Also reported in 267 N.W.2d 285.)

† Motion for rehearing denied, without costs, on September 21,
1978.

For the appellant the cause was submitted on the briefs of *Vaughn S. Conway* of Baraboo.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *James H. Petersen,* assistant attorney general.

CONNOR T. HANSEN, J. The petitioner-appellant, Joseph J. Huser (hereinafter defendant), was charged in a criminal complaint with five counts, later reduced to four counts, of delivering a controlled substance, cocaine, in violation of secs. 161.41(1)(b) and 161.16(4), Stats. A preliminary examination was held in the county court of Green Lake county, DAVID C. WILLIS, County Judge, presiding; and the defendant was bound over for trial.

The defendant petitioned the circuit court for Green Lake county for a writ of habeas corpus, arguing (1) that insufficient evidence was adduced at the preliminary examination to establish probable cause, (2) that the trial court had improperly restricted cross-examination of a state witness, and (3) that the state had destroyed evidence in the case, thereby prejudicing the defendant. After holding an evidentiary hearing, the circuit court dismissed the petition for habeas corpus relief, and the defendant appeals. The circuit court has stayed the criminal prosecution pending disposition of this appeal.

At the preliminary examination, three chemists employed at the Wisconsin state crime laboratory testified regarding the chemical nature of the substances allegedly delivered in various transactions; each stated that in his opinion, to a reasonable degree of scientific certainty, the substance tested was cocaine. The chemists testified that there exist forms of cocaine known as d-cocaine and l-cocaine; that these forms may be distinguished by certain chemical tests; and that the tests actually performed on the substances delivered were incapable of distinguishing d-cocaine from l-cocaine. The chemists testified that d-cocaine is a synthetic substance, not derived from coca leaves and not a salt, compound, derivative or preparation of coca leaves and further testified that d-cocaine and l-cocaine react differently with certain reagents.

A fourth witness, Charles Collar, an undercover agent and deputy sheriff for Green Lake county, testified that he had purchased from the defendant substances which the defendant described as cocaine. Collar testified that on five occasions over a six-month period in 1976, he asked the defendant whether he could obtain various amounts of cocaine, ranging from one gram to one-quarter of an ounce. Huser said he could, and he provided Collar with the requested quantities of a white powder, for which Collar paid a total of more than nine hundred dollars.

Additional facts will be set forth in discussion of the following issues:

1. Was the testimony of the state's chemists insufficient to establish probable cause to believe the defendant had committed a felony?

2. Did the trial court improperly limit the defendant's right of cross-examination?

3. Was the defendant prejudiced by the destruction of evidence?

4. Was the defendant prejudiced by an *ex parte* communication between the trial judge and a state witness?

5. Did the circuit court err in considering matters outside the record of the preliminary hearing?

A defendant may be bound over for trial if the evidence adduced at a preliminary examination establishes to a reasonable probability that a crime has been committed and that the defendant probably committed it. *State v. Berby,* 81 Wis.2d 677, 683, 260 N.W.2d 798 (1978); *Vigil v. State,* 76 Wis.2d 133, 141, 250 N.W.2d 378 (1977); *see:* sec. 970.03, Stats. A preliminary hearing is not an evidentiary trial, and guilt need not be established beyond a reasonable doubt. *Organ v. State,* 65 Wis.2d 36, 221 N.W.2d 823 (1974); *Taylor v. State,* 55 Wis.2d 168, 172, 173, 197 N.W.2d 805 (1972). Rather, at a preliminary hearing, a court is concerned with the

practical and nontechnical probabilities of everyday life in determining whether there is a substantial basis for bringing the prosecution and further denying the accused his right to liberty. *Taylor v. State, supra,* at 173.

On review of a trial court's finding as to probable cause at a preliminary hearing:

" '. . . The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence.' " *State ex rel. Hussong v. Froelich,* 62 Wis.2d 577, 583, 215 N.W.2d 390 (1974), *quoting State ex rel. Marachowsky v. Kerl,* 258 Wis. 309, 313, 45 N.W.2d 668 (1951). *See: State v. Berby, supra,* at 864.

## SUFFICIENCY OF THE EVIDENCE.

The defendant contends that the chemical evidence adduced at the preliminary hearing in this case is subject to a number of objections, and consequently argues that the evidence was insufficient to bind him over for trial. He argues that the state failed to establish an adequate foundation for admission of either the oral testimony or the written reports of the chemists and further argues that even if the chemical evidence was properly admitted, it was insufficient to establish that the substances delivered were controlled substances.

The defendant first argues that the trial court erred in admitting into evidence four chemical reports identifying substances delivered by the defendant as cocaine. The defendant maintains that these documents constituted hearsay, and that insufficient foundation was established for their admission under the hearsay excep-

tion for past recollections recorded. Sec. 908.03(5), Stats.[1]

This court has said that recorded recollections are admissible in evidence only where the writing does not refresh a witness' memory sufficiently for him to testify fully and accurately, and where the witness can first testify that he knew the facts to be accurate when they were recorded, and that they were recorded while fresh in his mind. *Harper, Drake & Asso. v. Jewett & Sherman Co.*, 49 Wis.2d 330, 342, 343, 182 N.W.2d 551(1971) ; *State v. Wind*, 60 Wis.2d 267, 274, 275, 208 N.W.2d 357 (1973).

No such foundation for admission of the chemical reports was established prior to their admission into evidence. However, the record shows that on cross-examination, defense counsel elicited the testimony of chemist David R. Picard that he did not recall running the particular tests in question; that his report was true and accurate; and that he wrote down his test results as he did them. This testimony constitutes sufficient foundation for admission of Picard's report.[2]

---

[1] The rules of evidence are generally applicable to preliminary examinations. Sec. 911.01, Stats., and Judicial Council Committee Note thereto, 59 Wis.2d at R369.

[2] The defendant contends that a lack of foundation cannot be cured after admission of the documents, but this argument is unpersuasive on the facts of the present case. The purpose of the foundation testimony is to assure that the writing reflects an adequate recollection, correctly recorded, III Wigmore, *Evidence* (Chadbourne rev. 1970), secs. 745–747, pp. 94–100, and this purpose was achieved by the evidence elicited in cross-examination of Picard, which fully established the trustworthiness of the document. Further, on direct examination of Picard, defense counsel had asked to reserve his objection to Picard's testimony, and the trial court agreed to defer further proceedings on the objection

In any event, sec. 165.79(3), Stats., specifically provides for the admissibility at a preliminary examination of certified reports prepared by the state crime laboratory. This subsection provides:

"(3) At any preliminary examination a report of the laboratory's findings with reference to all or any part of the evidence submitted, certified as correct by the administrator, shall, when offered by the state or the accused, be received as evidence of the facts and findings stated, if relevant and otherwise admissible in evidence. The expert who made the findings need not be called as a witness unless his appearance is demanded by the opposing party, in which case the judge shall so order and adjourn the hearing to a time when the expert is available to testify."

The reports admitted here were certified as required by the statute. It is the intent of sec. 165.79(3), Stats., that such certified reports be admissible as competent evidence in a preliminary hearing without the appearance of the expert who made the findings, except as otherwise provided by statute. Such reports are to be admitted unless they are inadmissible on some other ground. Similar statutes have been adopted in other jurisdictions, and their constitutionality has uniformly been sustained. *See generally:* Statutes compiled in V Wigmore, *Evidence* (Chadbourne rev. 1974), sec. 1674, *fn.* 7, pp. 827–833; Anno. 29 A.L.R. 289 (1924); 30 Am. Jur.2d, *Evidence,* sec. 1010, p. 144. The reports were properly admissible under this statute.

Each of the three chemists, after examining his written report, testified to having performed a series of four tests on respective samples of the substances allegedly delivered by the defendant, and further testified that in

until cross-examination. The fact that the foundation testimony was not introduced until that point does not preclude admission of the document.

his opinion, to a reasonable degree of scientific certainty, the substance was cocaine. The defendant further contends that this testimony was improperly admitted because no foundation was laid for its admission.

On cross-examination of the chemists, defense counsel elicited their testimony to the effect that they had no independent recollections of performing the particular chemical tests on which their testimony was based, and the record as a whole does not show that any of the chemists was in fact testifying from a refreshed, independent memory. *Compare: State v. Wind, supra,* at 274, 275.

Where, after reviewing a writing, a witness has no independent recollection of the facts reflected in the writing, the rule of past recollection recorded is applicable. In such a case ". . . the writing itself and not the witness' testimony may come into evidence. . . ." *Harper, Drake & Asso. v. Jewett & Sherman Co., supra,* at 342, 343. The oral testimony of the witness is admissible only by application of the rule of present recollection refreshed, which ". . . requires the witness to state, before he testifies, that he has independent recall of the facts. . . ." *Harper, Drake & Asso. v. Jewett & Sherman Co., supra,* at 343.

The chemists did not testify that examination of their reports gave them a refreshed and independent recall of the facts to which they testified. Their testimony on cross-examination established that none of the chemists had such a refreshed recollection. The trial court erred, therefore, in admitting their oral testimony as to the tests performed and the results of those tests. Because the chemists had no independent recollection of performing the tests or observing the results indicated in their reports, the documents themselves, instead of the witnesses' testimony, are all that should have been admit-

ted as evidence of these facts. *See: Harper, Drake & Asso. v. Jewett & Sherman Co., supra,* at 343.

This is not to suggest that the reports might not have been read into evidence or that the chemists could not have testified as to their customary procedures in handling substances submitted for examination or in performing various tests. Nor is it to suggest that they could not, as expert witnesses, testify regarding any matter of scientific knowledge within the scope of their expertise. Thus there is no question as to the admissibility of the chemists' testimony regarding the chemical nature of various types of cocaine and as to the effectiveness of various tests in distinguishing such substances.

Further, as expert witnesses, chemists may offer opinions on the basis of any facts of a type reasonably relied upon by experts in their field. Sec. 907.03, Stats. Thus an expert chemist might, in a proper case, be able to form an opinion as to the identity of a substance from recorded results of reliable tests performed on the substance. It cannot be said, however, that the chemists in the instant case were forming and expressing opinions on the basis of any evidentiary data reflected in the reports. The written reports are entirely conclusory, and the oral testimony of the chemists was no more than a recapitulation of the contents of the reports. Experts should not be permitted, by such a device, to convey the impression of an independent recollection and thus to circumvent the rule of *Harper, Drake & Asso. v. Jewett & Sherman Co., supra,* that a witness must have an independent recall of any historical facts to which he testifies.

However, the admission of the oral testimony in the instant case was unquestionably harmless to the defendant. The oral testimony was identical in import to the chemists' written reports. Because those reports were

properly admitted into evidence, admission of the parallel oral testimony did not in any way prejudice the defendant at the preliminary examination.

The defendant argues that even if the chemists' testimony was properly admitted, it does not show that the substance delivered was a controlled substance. This argument rests on the theory that a chemical form of cocaine known as d-cocaine is not included within the proscription of sec. 161.16 (4), Stats., and that the tests performed by the state do not exclude the possibility that the substances tested were the allegedly non-controlled form, d-cocaine.

Sec. 161.16 (4), Stats., proscribes:

"(4) Coca leaves and any salt, compound, derivative or preparation of coca leaves, and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine."

The parties agree that d-cocaine is not a derivative of coca leaves and that it is not a salt, compound, derivative or preparation of coca leaves. It is therefore a controlled substance only if it is "chemically equivalent or identical" to any of these substances. The parties also agree that d-cocaine is an isomer of a substance known as l-cocaine, and that l-cocaine may be derived from coca leaves.[3]

---

[3] The American Heritage Dictionary of the English Language defines "isomer" as: "A compound having the same percentage composition and molecular weight as another compound but differing in chemical or physical properties." *United States v. Orzechowski*, 547 Fed.2d 978, 980 (7th Cir. 1976), states: ". . . Isomers are commonly referred to as chemical relatives. . . ." *United States v. Hall*, 552 Fed.2d 273, 274 (9th Cir. 1977), states: ". . . Isomers are two or more compounds which have the same molecular formula but different molecular structures. The variations in structure may give rise to different chemical characteristics. . . ."

As we understand it, one isomer of cocaine, l-cocaine, may be derived either from coca leaves or synthesized chemically, and the natural and synthetic forms of l-cocaine are chemically indistinguishable. The performance of two tests, one known as the use of polarimetry and the other a melting point test, will distinguish the isomer l-cocaine from the isomer d-cocaine.

In the instant case each of the three expert witnesses called by the state testified that he performed four generally recognized tests of the substance, *i.e.*, a chemical spot test, a chemical extraction test, a gas chromatograph test, and an infrared spectrophotometry examination. As a result of these tests, each witness testified that to a reasonable degree of scientific certainty it was his opinion the substance was cocaine. None of the expert witnesses were able to testify whether the substance was d-cocaine or l-cocaine.

The question thus resolves itself to whether the isomer d-cocaine and the isomer l-cocaine are chemically equivalent or identical within the meaning of sec. 161.16(4), Stats. In *State v. Wind, supra,* at 269, this court held that, ". . . as there is no essential difference between *Cannabis sativa L.* and *Cannabis indica,* . . ." it is not necessary to prove the existence of a particular form to support a conviction for the sale of marijuana. We believe the same rationale is applicable to the instant case.

Whether d-cocaine is a controlled substance requires construction of the statutory definition of "chemically equivalent" substances, and the question therefore is to be resolved as a question of law. We conclude that the term "chemically equivalent" is not a technical term with any particular recognized meaning among chemists. If we were to consider the construction of this term to be a question of fact to be decided on the basis of expert

testimony, it would prevent uniform application of the statute: d-cocaine could be found to be a controlled substance as to some defendants but as to others, depending upon the relative credibility of the expert witnesses in a given case. This result is to be avoided, and we here determine as a matter of law that d-cocaine is a "chemically equivalent" form of cocaine and a controlled substance within the meaning of sec. 161.16(4), Stats.

It is acknowledged that d-cocaine is an isomer of the controlled substance l-cocaine. The schedules of controlled substances set forth in ch. 161, Stats., in some instances expressly proscribe a substance and its isomers. In sec. 161.16(4), Stats., isomers are not mentioned, but rather the words "chemically equivalent" are used. We do not regard this as a significant distinction. Both isomers are in fact called cocaine, and the state's chemists testified that in their opinion the term cocaine included both d-cocaine and l-cocaine.

Also, sec. 161.16(4), Stats., specifically excludes "extractions which do not contain cocaine or ecgonine." This can only mean that the statute was intended to include cocaine and those "chemically equivalent" substances which contain cocaine. Sec. 161.16(4), controls the delivery of the isomer of cocaine described as d-cocaine; it is unnecessary for the state to identify the particular substance delivered as d-cocaine or l-cocaine; and the evidence produced at the preliminary examination supports the determination that there was probable cause to believe a felony had been committed by the defendant.

### RESTRICTION OF CROSS-EXAMINATION.

The defendant next contends that the trial court improperly restricted cross-examination of Charles Collar, the undercover officer and deputy sheriff of Green Lake

county who testified that he purchased the alleged cocaine from the defendant on five occasions in 1976. A defendant may cross-examine witnesses against him at a preliminary examination, sec. 970.03 (5), Stats., and it is error for a court to improperly restrict such cross-examination. *See: Hays v. State,* 46 Wis.2d 93, 175 N.W.2d 625 (1970).

The permissible scope of such cross-examination is not unlimited, however. Cross-examination at a preliminary examination may not be for the purpose of exploring the general trustworthiness of the witness. The preliminary hearing " '. . . is not the proper forum to debate and determine issues as to credibility and weight of evidence once essential facts as to probability have been established.' " *State v. Knudson,* 51 Wis.2d 270, 280, 187 N.W.2d 321 (1971), *quoting State ex rel. Evanow v. Seraphim,* 40 Wis.2d 223, 228, 161 N.W.2d 369 (1968).

Rather, the cross-examination must go to the plausibility of the witness' story of the commission of the offense. The determination to be made at a preliminary examination ". . . is merely one of plausibility of the story and not general trustworthiness of the witness." *Wilson v. State,* 59 Wis.2d 269, 294, 208 N. W. 2d 134 (1973).

This court recognized in *Wilson v. State, supra,* at 295, that this distinction is essentially one of degree, but that:

". . . There is a point where attacks on credibility become discovery. That point is crossed when one delves into general trustworthiness of the witness, as opposed to plausibility of the story. Because all that need be established for a bindover is probable cause, all that is needed is a believable account of the defendant's commission of a felony."

Here, defense counsel sought, but was not permitted, to cross-examine the undercover agent on a wide range of matters not directly affecting his account of the alleged cocaine sales. These inquiries concerned such things as the agent's general duties, his employment background, his rate and source of compensation, his use of aliases and his then-current address. These questions go beyond the plausibility of the witness' story and were, for the most part, directed toward his general credibility. In large measure, they also appear to be an effort ". . . to fish for elements of the state's case. . . ." *State v. Knudson, supra,* at 280. The trial court did not err in restricting inquiry on these subjects.

Several of the inquires were more directly related to Collar's account of the purchases from the defendant. However, a presiding judge has considerable latitude in determining the proper scope of cross-examination, *Johnson v. State,* 75 Wis.2d 344, 361, 249 N.W.2d 593 (1977), and from a review of the record we conclude that none of the rulings challenged by the defendant represents an abuse of the county court's discretion.

Our examination of the record supports the observation of the trial court that the manner in which the cross-examination of witness-Collar was conducted was:

". . . apparently designed to intentionally confused [sic] the witness, attempt to confuse him and not give him the opportunity to have his own clear recollection of it. . . ."

In fact, it is our opinion the presiding magistrate unnecessarily permitted extended cross-examination by defendant's counsel throughout the entire preliminary examination. There is no merit to the contention that the cross-examination of any witness was unduly restricted.

### EX PARTE CONVERSATION.

On the first day of the preliminary hearing Collar testified that he had been convicted of a crime. In subsequent testimony when the hearing was reconvened, Collar was again asked if he had been convicted of a crime, and he answered, "Not to my knowledge. No, Sir. I don't think so." Defense counsel inquired as to the meaning of this ambivalent response, and the county court then stated:

". . . The Court is going to intercede here on the basis that the Defendant has mentioned to this Court and the Court had better clarify it in the record here. In any earlier hearing, this Defendant did testify that he had been convicted of a crime—

". . . .

". . . And he mentioned it to this Court and he mentioned the circumstances and this Court instructed him that he should in the future answer that he was not because of the fact, that at the time, he informed this Court that he was picked up as a Juvenile and it was handled as a Juvenile matter and as such he has never been arrested under the Statutes nor has he ever been convicted of any crime and the Juvenile record I presume, is still closed."

The defendant contends that his constitutional right of confrontation was denied by the trial court's *ex parte* communication with Collar. It is clear from the record that the court had merely advised the deputy that the juvenile proceedings in which he had been involved did not constitute a criminal conviction and that he need not answer affirmatively when asked if he has ever been convicted. This advice correctly stated the law as set forth in sec. 906.09(4), Stats., corrected Collar's misapprehension of the law, and thus resulted in the correction of his earlier, erroneous, testimony.

The right of confrontation was not impaired. The county judge informed the parties of the substance of

his conversation with Collar. Although Collar had not been criminally convicted, defense counsel was permitted to cross-examine him on the matter and to elicit testimony as to the circumstances of the juvenile proceeding, which concerned Collar's participation in the theft of a snowmobile. The defendant was not prejudiced by the trial judge's *ex parte* conversation with Collar.

## DESTRUCTION OF EVIDENCE.

The defendant next argues that material evidence was destroyed by the state and that he was thereby denied his constitutional rights of confrontation and his right to exculpatory material.

In cross-examination of Collar, defense counsel elicited testimony that a recording had been made of the defendant's voice during one of the transactions, but that Collar had never heard the recording. Collar did not know if other tapes were made. Jerome Johnson, Chief Deputy Sheriff of Green Lake county, first testified that he did not know of any tape with the defendant's voice on it, but on further questioning testified that he believed there had been such a recording, but that the tape had been erased and reused. Johnson did not know when the recording was made.

The defendant argues that he has been prejudiced by the erasure of this tape and that he has similarly been prejudiced by Collar's having discarded his original records of the serial numbers of the "buy money" used in the various purchases, and by the state's failure to provide him with a photograph of Jerome Huser, the defendant's brother, used by Collar in forming an initial, mistaken conclusion that the defendant was Jerome Huser.

None of these items was relied upon in any way by the state in establishing probable cause at the preliminary hearing and none of them is reasonably necessary to test the plausibility of Collar's story. Therefore, the

defendant's argument does not go to the question of probable cause or to the validity of the county court's decision that the evidence was sufficient to bind the defendant over for trial.

Rather, it is apparently the defendant's contention that the integrity of the fact-finding process is tainted by the unavailability of this evidence and that prosecution in the absence of the evidence does not comport with due process of law. This question is distinct from the probable cause determination which is the central function of the preliminary examination. In *State v. Amundson*, 69 Wis.2d 554, 578, 230 N.W.2d 775 (1975), this court found persuasive the holding of *United States v. Bryant*, 439 Fed.2d 642 (D.C. Cir. 1971), that in determining whether destruction of evidence constitutes a denial of due process, a court must consider ". . . the degree of negligence or bad faith by the government, the importance of the evidence lost, and the other evidence of guilt *adduced at trial.*" *Amundson, supra,* at 580. (Emphasis added.) This reflects the fact that the significance of individual items of evidence can be meaningfully assessed only in relation to the remaining evidence.

This determination cannot be made at a preliminary examination. This court has recently said that it is ordinarily difficult or impossible to ascertain at the preliminary hearing stage whether evidence in the hands of the state may prove exculpatory at the trial, and that "[t]his determination cannot be made in any meaningful way until '. . . after the issues and the Government's proof have crystallized. . . .' *United States v. King* (S.D.N.Y. 1970), 49 F.R.D. 51, 53." *Matter of State ex rel. Lynch v. County Ct.,* 82 Wis.2d 454, 466, 262 N. W. 2d 773 (1978).

The evidence allegedly destroyed was of no importance to the state's case at the preliminary hearing, and was

not relied upon either directly or indirectly. The serial numbers of the "buy money" recorded on Collar's discarded notebook pages also appear on his police reports, and there is no reason to suspect any discrepancy between these writings. The state did not rely upon any particular language or conversation which the defendant might reasonably expect to refute with the recording, and the recording concerned only one of the transactions in question. The evidence of guilt was more than sufficient for a bindover. Three chemists testified that the substances were cocaine. Collar testified to purchasing these substances on various occasions and twice identified the defendant in court as the person from whom he bought them. Field test results were consistent with the conclusion that the substances were cocaine.

In the context of the preliminary examination, therefore, the defendant was not denied due process of law, at this stage of the proceeding, by the fact that the evidence the defendant sought through cross-examination may have been destroyed.

## EVIDENCE NOT ADDUCED AT PRELIMINARY EXAMINATION.

Finally, the defendant argues that the circuit court erred in holding an evidentiary hearing regarding the circumstances surrounding the erasure of the tape recording. The defendant contends that the circuit court could properly consider only evidence presented at the preliminary hearing.

This contention is correct, insofar as the circuit court was reviewing the finding of the county court as to probable cause. The bindover was proper only if the evidence before the county court was sufficient to establish probable cause, and the circuit court could not take

additional evidence to supply any deficiency in this regard. *Chambers v. State,* 235 Wis. 7, 12, 13, 291 N.W. 772 (1940). In reviewing the probable cause determination, the circuit court was concerned only with the question whether there was competent evidence before the county court for it to act upon in determining the essential facts. *State v. Berby, supra,* at 683, 684.

Here there was sufficient evidence adduced at the preliminary examination to support a bindover. The additional evidence taken by the circuit court concerning the alleged erasure of the tape recording did not go to the question of probable cause and in no way supplemented the evidence tending to show that a felony had been committed by the defendant.

Summarizing the evidence adduced at the evidentiary hearing, the circuit court stated that during one transaction, on April 7, 1976, Collar had carried a microphone and radio transmitter, and his conversation was recorded by officers in a squad car; these officers testified that the transmitter was carried primarily for Collar's protection; as a result of static and background noise the recording was practically unintelligible, and for this reason it was erased or destroyed.

The additional testimony served to permit the circuit court to determine the collateral question whether the entire preliminary hearing was rendered unconstitutional by the unavailability of the tape recorded. In this context, consideration of the testimony was not error.

*By the Court.*—Order affirmed.