STATE of Wisconsin, Plaintiff-Appellant,

v.

Bruce RUSSO, Defendant-Respondent.†

Court of Appeals

*No. 80–1344–CR. Submitted on briefs December 17, 1980.— Decided February 13, 1981.*
(Also reported in 303 N.W.2d 846.)

† Petition to review denied.

For the plaintiff-appellant, the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *E. Gordon Young,* assistant attorney general.

For the defendant-respondent, the cause was submitted on the brief of *Waring R. Fincke* and *Shellow & Shellow,* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

MOSER, P.J.   The state appeals the trial court's dismissal of this action. The dismissal was based on the trial court's conclusion that the defendant's right of cross-examination was unduly restricted at the preliminary hearing. We find error in the dismissal, as well as in the conclusion on which it was based, and reverse and remand for trial.

Bruce Allen Russo (Russo) was charged with two counts of delivery of cocaine, party to a crime, in violation of secs. 161.16(4), 161.41(1)(b) and 939.05, Stats. One count was based on an incident which allegedly occurred on June 9, 1978, and the other count was based on an alleged September 14, 1978, incident. Separate preliminary hearings were held. This appeal concerns events which occurred during the preliminary hearing held on March 2, 1979, on the count stemming from the June violation (case number J-4760). The preliminary hearing on the September violation was held September 25 and 28, 1979 (case number J-6249).

Probable cause was found at the conclusion of each of the preliminary hearings. Both cases were before the trial court for a jury trial on June 9, 1980. At that time Russo's attorney filed a motion to dismiss the complaint and information in each case on the ground that, by their failure to specify that Russo was charged with delivery

of l-cocaine as distinguished from d-cocaine,[1] the complaint and information did not allege an offense cognizable at law.

The trial court concluded that the complaint and information were sufficient to notify Russo of the crimes charged.[2] However, focusing on the March 2, 1979, preliminary hearing transcript of the testimony of the chemist who analyzed the substances alleged to be cocaine, the court determined that defense counsel's cross-examination had been unduly restricted by the preliminary hearing magistrate and the finding of probable cause was improper. The trial court accordingly dismissed the matter.

An overriding consideration in addressing the issues in this case, and one that seems to have been obscured in defense counsel's brief, is that the scope of permissible cross-examination is limited by, and must be addressed in terms of, the purpose of the preliminary hearing: to determine if there is probable cause to believe that a crime was committed and that the defendant committed it.[3]

"A preliminary hearing is a determination by a magistrate that further criminal proceedings are justified; it

---

[1] Briefly, and in laymen's terms, l-cocaine and d-cocaine are chemically related substances possessing many of the same chemical properties. Because the abuse potential of d-cocaine has not yet been determined, it does not fall within Schedule II of the Controlled Substances Act. Only l-cocaine is proscribed under sec. 161.16(4), Stats. *See State ex rel. Huser v. Rasmussen*, 85 Wis.2d 441, 442, 270 N.W.2d 62, 62–63 (1978) (reh.); *State v. McNeal*, 95 Wis.2d 63, 65, 288 N.W.2d 874, 875 (Ct. App. 1980).

[2] This conclusion is consistent with the holding in the recent case of *State v. Dorcey*, 98 Wis.2d 718, 720, 298 N.W.2d 213, 215 (Ct. App. 1980).

[3] *See State v. Berby*, 81 Wis.2d 677, 683, 260 N.W.2d 798, 801 (1978).

is not an evidentiary trial."[4]  The preliminary hearing is held "to protect the accused from hasty, improvident, or malicious prosecution and to discover whether there is a substantial basis for bringing the prosecution and further denying the accused his right to liberty."[5]  A preliminary hearing is "concerned with the practical and nontechnical probabilities of everyday life in determining the existence of probable cause."[6]

In light of the purpose and scope of the preliminary hearing, we determine: (1) that there was no impermissible restriction on defense counsel's cross-examination of the state's expert witness; (2) that there was competent evidence upon which the preliminary hearing magistrate could have found probable cause; and (3) that the trial court erred in dismissing the action.

At the preliminary hearing the state's witness, Wayne R. Baumgart (Baumgart), a special agent for the Wisconsin Department of Justice, testified that he became acquainted with Thomas Henry (Henry) in February or March of 1978.  On June 8, 1978, Baumgart and another special agent, Thomas Stacy (Stacy), met Henry at a two-family residence on North 61st Street.  Baumgart and Henry went upstairs.  Henry made a phone call and shortly thereafter Russo joined Henry and Baumgart in the upper unit of the building.  They then discussed the purchase by Baumgart of one ounce of cocaine.  Russo produced a sealed plastic bag containing a powdery substance.  Some discussion followed in which it was indicated that the bag contained cocaine.  After getting permission from Henry and Russo, Baumgart went downstairs and returned with Stacy, whom Baumgart identified as his friend.  The four men discussed the purchase of one ounce of cocaine then, and the purchase of more

---

[4] *Taylor v. State*, 55 Wis.2d 168, 172, 197 N.W.2d 805, 807 (1972).

[5] *Johns v. State*, 14 Wis.2d 119, 122, 109 N.W.2d 490, 492 (1961).

[6] *Taylor, supra* note 4, at 173, 197 N.W.2d at 807.

later. Russo weighed the package and told Baumgart and Stacy that it was thirty-one grams, for which Baumgart paid Russo $2,200. In response to Baumgart's inquiry regarding the purchase of more cocaine, Russo indicated that he could provide it.

After leaving the residence Baumgart and Stacy ran a cobalt thiocyanate field screening test which indicated that the powder in the bag was cocaine.

On June 22, 1978, Baumgart called Russo to discuss the purchase of more cocaine.

On September 14, 1978, Baumgart and Stacy again went to the residence on North 61st Street and purchased two packages of cocaine from Henry for $4,400. Henry deducted one-half gram from the package as his payment. Baumgart and Stacy again conducted the cobalt thiocyanate field test which indicated that the substance they purchased was cocaine.

Russo's involvement in the September 14, 1978, transaction was implicated by the testimony of another special agent who saw Russo leave the residence about five minutes after Baumgart and Stacy left. There was also evidence of Russo's fingerprint on one of the packages purchased that day.

Raemarie Szymanski (Szymanski) a chemist at the Wisconsin Regional Crime Lab, testified for the state about her chemical analysis of the substances in the bags purchased by Baumgart and Stacy. She testified that the results of the several screening tests indicated that the substances in the bags contained cocaine.[7]

Szymanski admitted that she did not run any tests on the substances to differentiate between d-cocaine and l-cocaine. She concluded, nevertheless, that the substances contained l-cocaine. This conclusion was based on other factors:

---

[7] The tests performed were the Marquis, Mecke, Dille Koppanyi Color, p-DMAB, cobalt thiocyanate, gas chromatography, gas chromatography/mass spectrometry, and infrared spectrophotometry.

Q  Have you ever read any, or are you familiar with any publications which set forth the synthesizing of d-cocaine?

MR. SHELLOW: She's going to testify before documents that aren't before the court. [sic]

THE COURT: Overruled.

THE WITNESS: I'm familiar with theoretical tests that have been proposed for synthesis of d-cocaine.

MR. FLANAGAN: And based on your training and experience as a chemist, is that formulation or synthesis of d-cocaine an easy, obtainable—

MR. SHELLOW: Object, she's now testifying to synthesis, and I have no idea what synthesis she is referring to and I want to voir dire her on that.

THE COURT: You may ask her questions when you have an opportunity to.

. . . .

MR. FLANAGAN: There are many proposed theoretical pathways in the synthesis of d-cocaine, all of them are difficult involving lengthy separation as purifications, besides the actual reaction produce and reaction pathway. Now, you stated that the spectra for d-cocaine and l-cocaine would be the same, is that correct?

A  The Mass Spectra and the Infrared Spectra, yes.

Q  And you further stated the opinion that this was chemically equivalent to a derivative of cocoa [sic] leaves, these samples that I have been talking about today?

A  Yes.

Q  What do you base your opinion on the fact that these samples are chemically equivalent?

A  I base that opinion on the fact that it's unreasonable to assume that the sample is d-cocaine based on the fact that our lab has not been able to procure any pure d-cocaine; in fact, the only way of obtaining pure d-cocaine is through a process of purification which is difficult, time consuming, and expensive, and in fact on this particular sample I did have an indication of another cocoa [sic] plant alkaloid. The fact that there is any alkaloid is in my opinion evidence that the sample was extracted

from the cocoa [*sic*] leaf and not synthesized in a laboratory.

Q In other words, that it was l-cocaine?

A Yes, that this sample was indeed extracted from plant material and was l-cocaine.

Despite claims of undue restriction, defense counsel extensively cross-examined Szymanski and elicited her concession that she did not perform a test to differentiate l-cocaine and d-cocaine:

MR. SHELLOW:

Q So, the way it comes down to is, it's your opinion that d-cocaine is not chemically equivalent or identical, an identical derivative to cocoa [*sic*] leaves and l-cocaine is chemically or an identical derivative of cocoa [*sic*] leaves, but your tests will not distinguish the two, is that correct?

A Yes.

A list of the questions defense counsel contends he was prevented from asking because of the court's rulings on the state's objections is included in our footnote.[8]

---

[8] 1. Whether the chemist had an opinion that d- or l-allococaine were derivatives, or chemically equivalent to derivatives of coca leaves?

2. Whether the chemist had ever seen deuterated l-cocaine?

3. If she knew what deuterated l-cocaine was?

4. Whether deuterated l-cocaine would show the same IR spectrum as l-cocaine?

5. Whether d-cocaine was generally known as a derivative of coca leaves?

6. Whether the chemist differed with the Merck index conclusion that d-pseudococaine was a separate substance?

7. Who had informed her that she could only perform tests to determine whether a substance is d- or l-cocaine upon the request of a district attorney?

8. Whether the chemist had an opinion if $2,000 per ounce would cover the cost of synthesizing d-cocaine?

9. If the chemist had an opinion whether, with $500 worth of equipment and a graduate degree in chemistry, one could produce d-cocaine for $1,000 per pound?

A review of these questions and the transcript of the cross-examination of the witness that was permitted persuades this court that the preliminary hearing magistrate was fair and tolerant and properly limited the cross-examination to that which was relevant to the question of probable cause.

Although the state must prove at trial, beyond a reasonable doubt, that the substance involved was l-cocaine,[9] it would be absurd to require that that burden of proof be met at the preliminary hearing. The question at the preliminary hearing is one of probability. Where a co-

10. Whether the chemist had read anything other than a paper by Moore to support her hypothesis that cocaine that comes from the natural plant will have the alkaloid cinnamoylcocaine associated with it in trace amounts?

11. Whether the chemist had read any memoranda or directives of the State Crime Lab concerning how she was supposed to testify or concerning anything about her testimony in cocaine cases and what tests she should perform?

12. Whether she received orders from anyone in the State Crime Lab telling her what tests to perform on a substance suspected to be cocaine?

13. Whether she received any literature in which it was suggested what her testimony should be on cross-examination, i.e., literature associated with defense counsel's prior cross-examination transcripts?

14. Whether the chemist received any orders or directives from anyone at the Crime Lab concerning her testimony on the complexity of the synthesis of d-cocaine?

15. Whether she received any instructions concerning her testimony about cinnamoylcocaine and its presence or absence in the spectrum she ran?

16. Whether there were tests the chemist could have performed which could have enabled her to form an opinion, to a reasonable degree of scientific certainty, whether or not cinnamoylcocaine was present in any of the suspect substances?

17. Whether she compared her mass spectrum of authentic cinnamoylcocaine to the spectrum of one of the suspect substances?

18. Whether the chemist brought her cinnamoylcocaine standard spectrum to court?

[9] See note 1, supra.

caine charge is involved, the question is whether the substance in question was probably l-cocaine. Even considering the chemist's concession that she did not run tests to distinguish l- and d-cocaine, there was competent evidence, in the form of her other testimony, upon which it could be concluded that the substance was l-cocaine.[10]

The questions defense counsel was prohibited from asking were obviously designed to attack the witness' credibility and general trustworthiness, as opposed to the plausibility of her views, and were therefore beyond the scope of the proceeding.[11] Defense counsel was not entitled to exhaustively question the witness on her knowledge of the properties of, and the production of, d-cocaine in an effort to support the theory that the substance in question might have been d-cocaine. These are matters for trial. Defense counsel obtained the witness' concession that a differentiation test was not performed. However, the magistrate was entitled to, and obviously did, conclude that there was other evidence to support the view that the substance involved was probably l-cocaine.

Our review of the record, particularly the expert's testimony regarding the difficulty in producing d-cocaine, indicated that there was substantial ground upon which the magistrate could rest its judgment that the defendant probably committed a crime.

Accordingly, we determine that the trial court's order dismissing the case must be reversed and the action be remanded for trial.

*By the Court.*—Order reversed and cause remanded for trial.

---

[10] *See Dorcey, supra* note 2, at 723, 298 N.W.2d at 216.

[11] *See Wilson v. State,* 59 Wis.2d 269, 295, 208 N.W.2d 134, 148 (1973); *see also State ex rel. Huser v. Rasmussen,* 84 Wis.2d 600, 614, 267 N.W.2d 285, 292–93, *revd in part on other grounds,* 85 Wis.2d 441, 270 N.W.2d 62 (1978) (reh).