STATE EX REL. Glenn Adam FUNMAKER, Petitioner,

v.

William KLAMM, Milwaukee County Sheriff, and Milwaukee Circuit Court, Branch 10, Respondents.

Supreme Court

*No. 81–650–W. Argued March 1, 1982.—Decided March 30, 1982.*

(Also reported in 317 N.W.2d 458.)

For the petitioner there were briefs by *Charles F. Kahn, Jr.*, and *Kahn & Levine* of Milwaukee, and oral argument by *Charles E. Kahn, Jr.*

For the respondents the cause was argued by *Sally L. Wellman*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

BEILFUSS, C. J.   This is a review of a decision by the court of appeals denying a petition for a writ of habeas corpus. The petitioner, Glenn Adam Funmaker, is charged with causing injury by conduct regardless of life in violation of sec. 940.23, Stats. 1979–80. He sought a writ of habeas corpus in the court of appeals to challenge the sufficiency of the evidence introduced at the preliminary examination.

The victim of the crime, Stephen Dotson, testified at the preliminary examination that on July 29, 1980, he was in the Beer Garden Tavern, located at North 38th and West Vliet Street in Milwaukee. At about 8 p.m., he was informed that someone had knocked over his motorcycle which was parked outside. Dotson went out to investigate. He found his motorcycle lying on its side in the street and saw a person running down the street. Dotson watched the person run from the scene and then parked his motorcycle in a different location and re-entered the bar. Approximately an hour later, Dotson left the bar and walked across the street to his motorcycle. He was about to ride away when he noticed the same person he had seen earlier running from the scene of his overturned motorcycle. Dotson saw the man stand-

ing in the middle of the street, about eight to twelve feet from him, holding a baseball bat behind his back. Dotson asked the man why he had pushed over his motorcycle. As he bent down to look at a dent in his motorcycle he felt a blow to his head. He was knocked unconscious and does not remember anything else until waking up in the hospital several days later.

At the preliminary examination Dotson was initially uncertain in his identification of his assailant. The petitioner, Glenn Adam Funmaker, was not seated at the counsel table but was instead seated in the gallery with approximately ten other men. Eight of them appeared to be of native American ancestry. On direct examination Dotson stated that there were two men who looked quite similar. These two men were Glenn Adam Funmaker and his brother Scott. From the witness stand Dotson first identified the petitioner's brother Scott as his attacker. When he stepped down and observed them more closely, Dotson picked Glenn Adam Funmaker as the man he saw running from his motorcycle and later holding the baseball bat.

On cross-examination Dotson again identified Glenn Adam Funmaker as his assailant. After being asked whether he could now limit his choice to only one of the two men he originally selected, Dotson stated, "Well, like I say, with my second opinion, after I looked at both of them, I said it was the guy in the red shirt [Glenn Adam Funmaker]." Dotson later admitted that his initial choice had been Funmaker's brother, but repeated that he thought it was Glenn Adam Funmaker after having a closer look. After further cross-examination, Dotson said, "It could be either one of the two people I saw in the courtroom here."

A second witness, Jennifer Reek, identified a different man, Craig Ninham, as the attacker. She testified that she heard the man with the bat yell "give me your

money," and saw him swing the bat at Dotson. She stated that her identification was based upon the man's build and his hair. She also said she did have some doubts about her identification of Ninham as the man with the bat.

The examining judge found that "taking the evidence most favorably to the State, that the State has sustained its burden establishing that a felony probably has been committed and that it probably was committed by this defendant. . . ." The judge denied the defense attorney's request to make a closing argument on the issue of whether probable cause had been shown.

Glenn Adam Funmaker filed a petition for habeas corpus in the court of appeals, arguing that there was insufficient evidence at the hearing to establish probable cause that he was the attacker. He also claimed that the examining judge erred by viewing the evidence in the light most favorable to the State. Finally, he argued that he was denied a constitutional right when his attorney was not allowed to make a closing argument. The court of appeals denied the petition for the writ and this court granted Funmaker's petition for review.

The purpose of a preliminary examination is to determine whether probable cause exists to believe a felony has been committed by the defendant.[1] This court has repeatedly set forth the test for probable cause that the State must satisfy in order to bind over a defendant. In *State v. Berby,* 81 Wis. 2d 677, 683, 260 N.W.2d 798 (1978), this court stated:

[1] "970.03 **Preliminary examination.** (1) A preliminary examination is a hearing before a court for the purpose of determining if there is probable cause to believe a felony has been committed by the defendant. A preliminary examination may be held in conjunction with a bail revocation hearing under s. 969.08(5)(b), but separate findings shall be made by the judge relating to the preliminary examination and to the bail revocation."

"The probable cause that is required for a bindover is greater than that required for the issuance of an arrest warrant, but guilt beyond a reasonable doubt need not be proven.

"A defendant may not be bound over for trial unless it appears to a reasonable probability that a crime has been committed and that the defendant committed it. [Case omitted.]"

The examining judge is "concerned with the practical and nontechnical probabilities of everyday life in determining whether there is a substantial basis for bringing the prosecution and further denying the accused his right to liberty. [Case omitted.]" *State ex rel. Huser v. Rasmussen,* 84 Wis. 2d 600, 605–06, 267 N.W.2d 285 (1978).

In most cases the appellate court has a limited role in reviewing a trial court's finding as to the existence of probable cause at a preliminary examination.[2] In *Huser, supra,* at 606, we stated:

"On review of a trial court's finding as to probable cause at a preliminary hearing:

" ' ". . . The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence." ' *State ex rel. Hussong v. Froelich,* 62 Wis. 2d 577, 583, 215 N.W.2d 390 (1974), quoting *State ex rel. Marachowsky v. Kerl,* 258 Wis. 309, 313, 45 N.W.2d 668 (1951). *See: State v. Berby, supra,* at 864."

---

[2] A reviewing court may review the record *ab initio* if the trial court failed to make findings of fact or where the principal facts and inferences therefrom are undisputed. *State v. Williams,* 104 Wis. 2d 15, 21–22, 310 N.W.2d 601 (1981). However, that situation is not present in this case.

Funmaker contends that because of the difficulties encountered in identifying him there was insufficient evidence to establish probable cause. We agree with the court of appeals that there was evidence from which the magistrate could find probable cause. Although Dotson was uncertain at first as to whether Funmaker or his brother was the assailant, on closer examination he did identify the petitioner Funmaker. He repeated on cross-examination that after a closer look he thought Funmaker was the man he had seen.

It is certainly true that Dotson's identification of Funmaker was somewhat equivocal. Adding to the uncertainty was the witness, Reek, who identified a third person as the man with the baseball bat. These problems may make it difficult for the State to prove that Funmaker is guilty beyond a reasonable doubt at trial. But that is not at issue at this stage of the proceedings. Dotson did identify Funmaker as his assailant and we hold that, in this case, his identification constitutes competent evidence for the magistrate to act on in finding probable cause. The possible weaknesses in Dotson's identification are matters affecting the weight and credibility of Dotson's testimony. Such issues are properly determined at trial, not at the preliminary examination. As we said in *State v. Marshall*, 92 Wis. 2d 101, 115, 284 N.W.2d 592 (1979):

"We have held that 'the purpose of the preliminary is not to make a final judgment on the credibility of [a witness] ; the court's role [is] simply to ascertain the plausibility of her story and whether, if believed, it would support a bindover.' *Vigil v. State*, 76 Wis. 2d 133, 144, 250 N.W.2d 378 (1977). 'The preliminary hearing " '. . . is not the proper forum to debate and determine issues as to credibility and weight of evidence once essential facts as to probability have been established.' " ' *State ex rel. Huser v. Rasmussen*, 84 Wis. 2d 600, 614, 267 N.W.2d 285 (1978), quoting *State v. Knudson*, 51 Wis. 2d at 280,

and *State ex rel. Evanow v. Seraphim,* 40 Wis. 2d 223, 228, 161 N.W.2d 369 (1968). . . ."

In *Wilson v. State,* 59 Wis. 2d 269, 294–95, 208 N.W.2d 134 (1973), we recognized that this distinction between credibility and plausibility is one of degree:

"The central approach to the role of the magistrate in determining credibility of witnesses is one of degree. In *Knudson,* the defendant was able to attack the credibility of the state's witness through what amounted to a cross-examination of her, but was not allowed to call in other witnesses to show variances in her story. There is a point where attacks on credibility become discovery. That point is crossed when one delves into general trustworthiness of the witness, as opposed to plausibility of the story. Because all that need be established for a bindover is probable cause, all that is needed is a believable account of the defendant's commission of a felony."

In the present case Dotson's identification of Glenn Adam Funmaker meets this test of plausibility. The examining judge could find probable cause.

The petitioner's second argument is that the examining judge improperly failed to consider all the evidence and only considered the evidence pointing towards Funmaker's guilt. This contention stems from the examining judge's statement that "taking the evidence most favorably to the State, that the State has sustained its burden establishing that a felony probably has been committed and that it probably was committed by this defendant." This was an erroneous statement of law because the state is not entitled to any such presumption. In fact, the state has the burden to show that probable cause exists. However we agree with the court of appeal's conclusion that this was merely a misstatement by the examining judge. The transcript makes clear that the examining judge con-

sidered all the evidence and was aware of the proper standard to be applied in determining probable cause. He applied the test correctly, despite articulating it incorrectly. He spoke of the burden being on the state to show probable cause. He also indicated his awareness of the potential problems with the state's prosecution:

"I've heard the evidence. It's fresh in my mind. I think I perceive the difficulties the State—the State may have if this ultimately is the sum and substance of its case at trial. I don't know whatever evidence they may or may not have other than some people alluded to in the complaint, but that's not part of the Court's consideration at this time. But you will have your challenges available before the trial court on the sufficiency of the evidence to support the bind over, but I'm satisfied there is sufficient evidence for the bind over."

This indicates that the examining judge was aware of the potential problems with the credibility of Dotson's identification. He did consider all the evidence and found Dotson's identification sufficiently plausible to warrant a bind over.

Petitioner's final argument is that he was denied a constitutional right when his counsel was not allowed to give a closing argument at the preliminary examination. The court of appeals agreed that he was deprived of a constitutional right, but found it to be harmless error because the examining judge was aware of the arguments that could have been made at the closing argument. We hold that there is no constitutional right to give a closing argument at a preliminary examination.

The court of appeals relied on two United States Supreme Court cases to conclude that a constitutional right exists to have a closing argument at the preliminary examination. In *Coleman v. Alabama,* 399 U.S. 1 (1970), the court found a constitutional right to the assistance of counsel at a preliminary examination. The court wrote that this is a "critical stage" of the prosecution, requir-

ing the assistance of counsel to avoid potential prejudice to the defendant's rights. *Id.* at 9.

In *Herring v. New York*, 422 U.S. 853 (1975), the court held unconstitutional a statute allowing the denial of a closing argument in nonjury trials. The court stressed the importance of closing arguments:

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." *Id.* at 862.

It does not follow from these cases that a constitutional right exists for closing argument at a preliminary examination. The basis of *Herring* was that the closing argument represents the defendant's final opportunity to persuade the trier of fact. Indeed, the court even noted that its holding was limited to arguments at the close of a trial: "We deal in this case only with final argument or summation at the conclusion of the evidence in a criminal trial. Nothing said in this opinion is to be understood as implying the existence of a constitutional right to oral argument at any other stage of the trial or appellate process." *Id.* at 863, n. 13.

Past cases have made it clear that the right to a preliminary examination is solely a statutory right. In *State ex rel. Klinkiewicz v. Duffy*, 35 Wis. 2d 369, 373, 151 N.W.2d 63 (1967), we wrote: "The right to such an examination stems purely from statute and is not considered a constitutional right."[3]

---

[3] *See also: State ex rel. Welch v. Waukesha Co. Cir. Court*, 52 Wis. 2d 221, 189 N.W.2d 417 (1971).

A purpose of a preliminary hearing is quite different from a trial. As discussed above, the defendant's guilt need not be proven beyond a reasonable doubt. Because the examining judge does not make a final determination on the credibility of the evidence, a party may be limited in its attempts to introduce evidence for impeachment purposes.[4] Other rights which are recognized at trial may not be constitutionally guaranteed at the preliminary hearing. There is no constitutional right to confront adverse witnesses at a preliminary examination, although this right is granted by statute.[5] Thus, although there is a constitutional right to counsel at the preliminary hearing, the constitution does not require that counsel be allowed to play the same role as counsel at trial. A counsel's role is necessarily limited by the limited scope of the preliminary examination. The decision to allow closing argument rests within the sound discretion of the examining judge. While it may be the better practice to allow closing arguments at most preliminary hearings, we hold that it is not constitutionally required.

In the present case the denial of closing argument was a reasonable exercise of discretion. Only two witnesses testified and the facts were not complicated. The examining judge indicated his familiarity with the evidence and with the weak links in the state's case. The only arguments available to defense counsel would have dealt with the identification of the petitioner and the examining judge was familiar with the variances in the evidence. Furthermore, the record indicates that defense counsel was allowed to make several closing state-

[4] *State v. Marshall,* 92 Wis. 2d 101, 115, 284 N.W.2d 592 (1979).
[5] *Mitchell v. State,* 84 Wis. 2d 325, 336, 267 N.W.2d 349 (1978).

ments which contained the essence of any potential closing arguments.

We hold that sufficient evidence was introduced to bind over the petitioner and that the petitioner's constitutional rights were not violated by the denial of a closing argument.

*By the Court.*—The decision of the court of appeals is affirmed.

STEINMETZ, J. (*concurring.*) I agree with the result and reasoning of the majority in this case. In the majority decision the belief is apparent that if a judge decides he wishes to hear argument at a preliminary hearing, he will not only invite it but may also set time limits for it. Certainly, if a judge may properly limit the time for argument at the close of trial, he may also do it at the preliminary examination. The majority obviously believes this right to limit goes without saying. I believe it needs to be stated for uniformity of interpretation by all judges in the state.