STATE, Plaintiff in error, vs. JANASKY and wife, Defendants in error.

*November 10—December 5, 1950.*

For the plaintiff in error there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

For the defendants in error there was a brief by *Willis E. Donley* of Menomonie, attorney, and *Terence N. Hickey* of Milwaukee of counsel, and oral argument by *Mr. Donley.*

MARTIN, J. After stating that there were two essential elements to be proven within reasonable probabilities in this case, first, that the fire was of incendiary origin and, second, that there is probable cause to believe that the defendants, or either of them, set it, the trial court then stated as follows:

"There is sufficient evidence in my opinion to show that the defendants had an opportunity to set the fire and that they had a motive for setting it."

Whether or not the presence or absence of motive is material is stated as follows in 1 Wharton, Criminal Evidence (11th ed.), p. 288, sec. 246:

"The presence or absence of motive in cases depending wholly on circumstantial evidence is not a factor that determines either the guilt or the innocence of the accused. Proof of motive does not establish guilt, nor want of it establish innocence, . . ."

It follows that the only question presented at this time is whether the state offered sufficient evidence to show within reasonable probabilities that the fire was of incendiary origin.

Evidence taken at the preliminary examination tended to establish the following ultimate facts:

On the early morning of January 11, 1950, a dwelling house located at 1020 Thirteenth street in the city of Menomonie, Dunn county, was partially destroyed by fire. The house was occupied at the time by the defendants and their infant son as tenants of the Kraft State Bank of Menomonie. The contents of the house, belonging to the defendants, were

insured by an $8,000 fire insurance policy written December 1, 1949. The house was a two-story dwelling approximately twenty-eight to thirty feet square, which faced west, and which had a basement under the entire north one half. It was heated by means of an oil burner installed inside the furnace.

The temperature during the night of the fire was estimated at twenty-two to twenty-eight degrees below zero. The defendants admit they arrived home that evening about 9:30 p.m. and claim to have been awakened by heat and smoke. They claim they were unable to escape down the stairway and that they escaped down some bed sheets tied to a bed in the south bedroom.

Captain Janasky brought his young son to the Memorial Hospital, located less than a block away, at about 2 a.m. and asked the night nurse to call the fire department, which she did. Captain Janasky was wearing a pajama top, trousers, and shoes. The small boy was wearing pajamas and had a sheet around him. He left the boy at the hospital and soon returned with his wife, who was dressed in a nightgown, fur coat, and a pair of white woolen socks. Mrs. Janasky and her son were put to bed for about two and one-half hours but were not admitted as patients nor seen by a doctor. The night nurse gave Mrs. Janasky first aid for a scratch on her leg. The Janaskys appeared excited and upset. In addition to the foregoing testimony, the nurse testified that about fifteen minutes after Janasky brought the boy to the hospital she went outside to look at the burning dwelling and at that time the whole house seemed to be entirely enveloped in flames.

The first city fireman to arrive at the scene within a very few minutes after he received the telephone call testified that at that time the front porch was completely burning and at first he thought there was no inside fire. He began fighting the porch fire, during which time he broke the front window with water and then observed the fire inside the house. There

was a bed sheet tied to a leg of a bed in the south bedroom and projected downward out the window.

The fire chief received a telephone call from the fire station about 2 a.m. and arrived at the fire within five minutes. He testified that at that time there were flames on the porch, flames coming out of the second story west window and out of the northwest side of the chimney. All floors of the building including the basement were on fire, and fire was coming out of the roof which eventually collapsed. The fire was under control within two to two and three-quarter hours.

The insurance adjuster visited the burned premises the day of the fire and again on January 16, 1950, when he was accompanied by a wrecker operator and mechanic from a local garage. They removed a refrigerator and stove from the basement in order to determine the amount of damage. They brought tools and during their visit pried and pulled the oil burner out of the furnace and removed it to the front porch of the house. The mechanic testified that liquid, which was oil and water, ran out at that time. They found a chest of drawers or dresser in the center of the basement. They stood it upright and with a wrecking bar pried out the top drawers in which they found a few undergarments. They were unable to open the two lower drawers which were imbedded in the frozen debris. There was no odor of oil.

An army sergeant assigned to recruiting service under Captain Janasky, testified that about two weeks after the fire he visited the burned house with the defendant, at which time they went into the basement. He found the dresser in the southwest corner of the basement, and removed all but one drawer. These drawers contained a few items, including one pair of fatigue trousers which were wet and oily.

The state fire marshal testified concerning the destruction caused by the fire. The frozen condition of the rubble, together with a snowfall which occurred on January 16th, made it impossible for him to investigate the premises when he

arrived there about a week after the fire. His second visit was on April 3, 1950, and he was again accompanied by the insurance-company adjuster. They found the dresser two or three feet generally west of the furnace door. The two small top drawers and the two large drawers immediately under the small ones were missing. An elm log was used to batter the dresser apart and get at the two remaining drawers. They contained a few items of clothing either spotted or saturated with some sort of petroleum oil. He observed for the first time an end of tubing with a male connection attached, which was the oil line leading from the oil tank to the oil burner, sticking out of the rubble. He dug through the rubble and found that the connections were undamaged and that it was easily possible to make the attachment. The oil tank was practically empty. There was an odor of petroleum in the basement. He chipped through about three inches of ice and inspected the basement drain which was about eighteen inches from the tap of the oil tank and found that it contained oil. He observed a box of shredded wrapping paper which was oily, charred but not burned. He testified that he was not present when the oil burner was removed. The deputy fire marshal confronted Captain Janasky with the two dresser drawers and asked him if he could account for why they were practically empty and for the presence of oil in them and he said he could not. He asked Mrs. Janasky why the drawers did not contain very much and she said that she was advised to take inventory of her belongings and the agent would then raise the insurance from eight to ten thousand dollars.

The state cites the following circumstances to show that the fire was of incendiary origin: (1) Oil line disconnected from tank; (2) fuel oil found in dresser; (3) basement floor contained oil; (4) intensity of fire; (5) dresser drawers virtually empty; and (6) Janaskys' explanation of their escape from the fire is improbable.

The insurance adjuster, wrecker operator, and mechanic visited the premises on January 16, 1950, five days after the fire. They found no oil in the dresser drawers that they examined, and no odor of petroleum in the basement. The mechanic testified that they removed the oil burner from the furnace and placed it on the front porch. Liquid which was oil and water ran out at that time. The army sergeant and Captain Janasky were at the premises about two weeks after the fire. The sergeant found a pair of wet and oily fatigue trousers in one of the drawers.

The testimony of the deputy fire marshal concerning conditions found in and around the burned premises was predicated upon his observations when he investigated the premises on April 3, 1950, *three months after the fire.*

In connection with the investigation made by the deputy fire marshal, the court said:

"The investigation is entitled to very little, if any, credibility, because at least three people had visited the scene of the fire and tampered with this dresser before that time and the oil burner had been removed and several people had been in the basement. However, taken at its face value, it still does not satisfy the requirement of reasonable probability. Nothing has been found by any of the witnesses which directly points to an incendiary fire."

Among other things, the court stated further:

"I am satisfied that the state will not be able to satisfy a jury with such testimony, or any which they will be able to produce of a circumstantial nature, of the guilt of the defendants and I see no reason for putting Dunn county and the defendants to the expense of a trial."

From the foregoing the state asserts that the trial judge tested the evidence as though the state had the burden of proving beyond a reasonable doubt and as though the motion before him were one for a directed verdict. Further, that he

not only weighed the evidence before him but went further and "donned the mantle of prophecy with reference to the convincing power of evidence not before him and the existence and nature of which he could not possibly know."

A vague suspicion can be aroused by the action of the defendants after the fire in making claim for their loss, and the state has stated presumptions, inferences, and conclusions which would create a suspicion of the guilt of the defendants, but mere suspicion is not sufficient. Under the circumstances, the order granting the motion of the defendants, made before the trial pursuant to sec. 355.09, Stats., is affirmed. The evidence is insufficient to bring the guilt of the defendants within reasonable probabilities.

*By the Court.*—Order affirmed.