STATE, Respondent, v. KITOWSKI, Appellant.

*No. State 25. Argued September 5, 1969.—Decided October 3, 1969.*
(Also reported in 170 N. W. 2d 703.)

For the appellant there was a brief by *James P. Lonsdorf* and *Tinkham, Smith, Bliss & Patterson,* all of Wausau, and oral argument by *Mr. Lonsdorf.*

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. The sole question presented by this appeal is whether the evidence relied upon by the jury was sufficient to prove the necessary elements of the crime of arson. Two elements must be proved beyond a reasonable doubt in order to sustain the conviction for the crime of arson. They are: "(1) the *corpus delicti;* that is, a fire caused by a criminal agency; and (2) the identity of defendant as the one responsible for the fire." Curtis, *Law of Arson,* p. 526, sec. 486; *see also State v. Janasky* (1950), 258 Wis. 182, 45 N. W. 2d 78. On this appeal defendant contends that neither of these elements have been proved. The state concedes that the proof is circumstantial as to both elements but contends that the circumstantial evidence in this case is sufficient to prove both elements of the crime beyond a reasonable doubt.

Proof beyond a reasonable doubt must measure up to the same standards whether the evidence is direct or circumstantial. We have said that the test applied upon appeal to this court is whether the "evidence adduced, believed and rationally considered by the jury, was suffi-

cient to prove the defendant's guilt beyond a reasonable doubt." *State v. Waters* (1965), 28 Wis. 2d 148, 153, 135 N. W. 2d 768; *see also Gauthier v. State* (1965), 28 Wis. 2d 412, 137 N. W. 2d 101.

The party on whom rests the burden of proof is not required to convince the members of this court of guilt beyond a reasonable doubt. Our duty is merely to ascertain from the record whether "the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183.

The same tests must be applied to measure the sufficiency of circumstantial evidence.

". . . each of the several circumstances relied upon must be proved beyond a reasonable doubt, and these circumstances must not only point with moral certainty to the guilt of the defendant, but must exclude every reasonable hypothesis of innocence." *State v. Smith* (1967), 36 Wis. 2d 584, 591, 153 N. W. 2d 538.

In the instant case, the home of Mrs. Betty Moore burned during the early morning hours (5 a. m.) of June 17, 1968. She was not home, and no one could testify on the basis of personal knowledge that the fire was of incendiary origin or that the defendant started the fire. Such an evidentiary background is not unusual in arson cases.

"Arson is one of those crimes which are peculiarly of secret preparation and commission; and it is very seldom that the prosecution can furnish testimony of an eye witness who observed the setting of the fire. The very nature of the crime is such that it becomes necessary for the State, in many, if not in most, cases to rely upon circumstantial evidence to establish the guilt of the accused." *Curtis, supra,* sec. 485, pp. 518–520.

Our court has frequently expressed its opinion on the necessity and propriety of the proof of crime by circum-

stantial evidence. Perhaps one of the best statements of the rationale appears in *Schwantes v. State* (1906), 127 Wis. 160, 176, 106 N. W. 237. Therein Mr. Justice MAR-SHALL, speaking for the court, said:

"There should be no distrust thrown on the former even in regard to proof of the essential elements of the *corpus delicti*. If the punishment of criminal offenses were to wait upon the production of direct evidence of the body of the crime, or any other element necessary to conviction, there would be immunity in that regard in perhaps the majority of the most serious cases of criminal homicide and other most heinous offenses. In no other way can society be efficiently protected, wrongs redressed, and rights protected than to abide by what has been said."

Circumstantial evidence properly established may be and often is stronger and more convincing than testimonial evidence. *State v. Smith, supra,* page 590.

The following chain of circumstantial evidence is relied upon by the state to prove the incendiary nature of the fire and Kitowski's guilt in setting it.

The record indicates that Betty Moore, the owner of the house, and the defendant, Kitowski, knew each other well. They apparently had been going together. During the week before the fire, the defendant had spent a considerable amount of time at the Moore farm assisting her in plowing and taking care of the animals.

In the early morning hours of June 17, 1968, Betty Moore and the defendant were at the home of the Wishmans. An argument ensued after Betty slapped the defendant in the face to awaken him. There is evidence of some beer throwing at this point. The two of them then retired to the bathroom. A few minutes later Betty Moore emerged from the bathroom with bruises on her throat, and the defendant's trousers were torn and there was blood on his lips. Betty Moore was yelling at the defendant, and she told him she did not want him around her house any more. The defendant, according to the testi-

mony of Betty Moore, stated, "Well, I am going to burn that God damn thing down to the ground right now." The other people at the Wishman home, in order to terminate the quarrel, physically ushered Kitowski from the house. He left there in his car at about 4:45 a. m. The fire commenced shortly after 5 a. m. and was discovered by a neighboring farm boy at 5:14 a. m. Shortly before 5 a. m. Margaret Lampe, who lives on a farm adjoining the Moore farm, saw a car which she said looked like the defendant's car, which she had seen at the Moore place during the previous week. The neighbor boy and his brother, who discovered the fire, upon arriving at the scene saw that the fire was on the enclosed back porch. There was testimony that there was nothing on that back porch which was likely to cause fire by spontaneous combustion, nor was there any evidence of a storm or any other natural factors which would account for the fire. Shortly after 5 a. m. Margaret Lampe saw the same car that she identified as being like that of the defendant driving from the direction of the Moore farm. At about 5:25 a. m. the defendant was seen by two witnesses driving his car near the bridge at Mosinee heading to town from the direction of the Moore farm. By this time, Betty Moore was in Mosinee, and she there saw the defendant sometime shortly before 5:35 a. m. She was told by a member of the fire department that her house was on fire. She accused Kitowski of setting the fire. He remained silent in the face of this accusation, although at a somewhat later time, when she saw him again, he denied her accusations.

We are satisfied that upon the basis of this evidence, which was believed by the jury, a trier of the fact could be convinced beyond a reasonable doubt that the fire was of incendiary origin and that the fire had been set by the defendant. Curtis, *Law of Arson, supra,* pp. 528, 529, sec. 486, points out, "The *corpus delicti* may be

proved, with other elements of the offense, by circumstantial evidence." The same evidence which tended to show the responsibility of the defendant also supports the establishment of the *corpus delicti*. Curtis, *supra,* page 532, sec. 486, points out this relationship, stating, "The facts which are presented to show the responsibility of the defendant may aid in establishing the *corpus delicti*." It appears that the jury concluded on the basis of the evidence that a quarrel had ensued between the defendant and the owner of the property, that the defendant had actually threatened to burn down the building only a short time before the combustion commenced, and that he was in the immediate vicinity of the Moore home at the time the fire started. His conduct following the discovery of the fire when he stood mute in the face of the accusation of arson, when he would "naturally be expected to deny [the accusation] is circumstantial evidence that he believes the statements to be true and that his conduct is thus receivable against him as an admission of such belief." McCormick, *Evidence* (hornbook series), p. 528, sec. 247.

In addition, there was a complete lack of evidence showing the possibility that the fire resulted from natural causes. While the remote possibility of a fire occasioned by natural causes was not ruled out, we believe that the law is correctly stated in *Grimes v. State* (1949), 79 Ga. App. 489, 54 S. E. 2d 302, quoting from Curtis, *Law of Arson,* p. 533, sec. 486:

" 'the mere possibility that the fire was occasioned by spontaneous combustion or by some other cause innocent of criminal intent, does not demand an acquittal, for the jury must act on probabilities, not possibilities.' "

The evidence in the instant case very strongly ruled out natural causes. Taking the evidence as a whole, we are satisfied that it was sufficient to satisfy the jury beyond a reasonable doubt that the fire was of an incendiary

nature and that the defendant was the incendiary. In *Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183, we stated the test to be used before this court will reverse a conviction on the basis of the insufficiency of the evidence. We said therein:

". . . the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' "

Using that test, we conclude that the testimony was sufficient and that the jury, acting reasonably, could on the basis of the evidence conclude that the defendant was guilty beyond a reasonable doubt.

*By the Court.*—Judgment affirmed.