STATE, Plaintiff in error, v. BERBY, Defendant in error.

*No. 76–734–CR.  Argued October 31, 1977.—*
*Decided January 3, 1978.*
(Also reported in 260 N.W.2d 798.)

678

For the plaintiff in error the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the briefs was *Bronson C. La Follette*, attorney general.

For the defendant in error there was a brief by *Constantine, Christensen, Krohn & Kerscher, S. C.*, and oral argument by *Thomas C. Krohn*, of Racine.

DAY, J.  In this case the State of Wisconsin, by writ of error, challenges an order of the Racine County Court dismissing a criminal complaint.[1] The complaint charged the defendant, Ronald Berby, with arson contrary to sec. 943.02(1)(a), Stats. (1975). The trial court dismissed the complaint following a preliminary

[1] The state's appeal in this case is authorized by sec. 974.05 (1)(a), Stats. (1975) and by *State v. Antes*, 74 Wis.2d 317, 323, 246 N.W.2d 671 (1976).

hearing because it found that there was insufficient evidence to warrant a bindover to the circuit court.

The issues in this case are as follows:

1. What is the standard of appellate review of a trial court finding of insufficient evidence at a preliminary hearing?

2. Was there competent evidence to support the trial court determination that the fire did not have an incendiary origin?

3. Did the trial court incorrectly consider the defendant's lack of motive as a reason for dismissing the criminal complaint?

Mr. Berby rented the building at 1409 Washington Avenue, Racine, Wisconsin and used it for his business, the Johnson Music Store. The building had one story and an attic with no basement.

A fire occurred in the building on the evening of November 2, 1976. Mr. Berby was the last person to leave the store that night, at approximately 8:00 p.m. Before he left, he locked both doors and activated the burglar alarm.

Officers Horvath and Cramer of the Racine Police Department were the first people to arrive at the fire at 8:52 p.m. The testimony of the police officers and William Jones, an investigator for the Racine Fire Department, showed that both doors were still locked and that the store's windows were intact.

Only Mr. Berby, his employees, Erv Johnson and John Jameson and his father, Bill Berby, had keys to both the store's doors and the burglar alarm. All of these keys were accounted for on the night of the fire.

An electric clock inside of the store stopped at 8:36 p.m. From this fact, fire investigator Jones stated that it was his opinion that the fire had started approximately one-half hour sooner because it would have taken one-half hour for the fire to burn through the drywall ma-

terial, melt the electric wires and short out the electricity.

Investigator Jones opined that the fire started in a storage room in the back of the store along the east side of the workshop area hallway. He thought the fire started there because of the severity of the damage in that room, the consumption of a large portion of the roof directly above one part of the room, an odor similar to paint thinner in the room and spaulding,[2] or flaking of the concrete floor. Jones observed the spaulding near the southwest corner of the east storage room floor, almost directly below where he stated there were holes in the roof. The holes in the roof that Mr. Jones testified about were not in the southwest corner of the roof.

Jones testified that he thought that the fire was a deliberate act originating from a flammable agent. The fire load or combustible materials in the east storage room consisted of a wooden door, wooden shelves, studdings, firring strips and two violin cases.

Racine fireman, James Markusen, went directly to the roof of 1409 Washington Avenue when he arrived at the fire. He helped open a hole in the roof with an ax. This hole was the soft spot in the roof tar directly above the point of origin of the fire. Markusen testified that the hole was opened in the southwest portion of the roof.

Racine fireman, Jay Prothero, helped chop the hole in the roof and he testified that it was in the south or back end of the roof.

Lt. Boehme of the Racine Fire Department testified that three holes were opened on the roof. One hole was over the southeast corner of the building where no fire was found. But two other "hot spots" were opened, over the fire. One hole was south of a ventilator, directly over the fire, the other was to the east of that hole.

---

[2] According to Investigator Jones, spaulding occurs when cement is subjected to considerable heat, expanding the air bubbles within the cement and causing the cement surface to flake.

One of these latter two holes was in the west central portion of the roof.

Lt. Boehme testified that the area above the lesson rooms, some distance to the north and northwest of the east storage room were piled high with papers. The papers were bills and invoices, some in boxes, some loose. Investigator Jones testified that there were receipts and other documents kept in a storage space directly to the northwest of the east storage room. Fireman Markusen testified that there were large amounts of paper in the attic area.

After the fire was out, the firemen started to haul debris out of the building. While fireman Jay Prothero was hauling out debris, he smelled the odor of a flammable liquid or accelerant ". . . below the loft where the records were." Firemen Markusen and Prothero were together when Prothero detected the odor, but Markusen testified that he didn't smell anything other than burnt wood, paper and smoke. Prothero testified that Markusen had agreed that he smelled a flammable liquid at the time.

After Lt. Boehme got off of the roof he was carrying out debris and noticed the odor of turpentine or paint thinner. Boehme then saw a can similar to one of the state's exhibits being shoveled into a bucket with other debris. The record does not state where the can was initially found.

Mr. Jones smelled paint thinner when the firemen were removing debris along the south wall of the east storage room. He first saw the can when it was pointed out to him by Lt. Boehme outside of the music store. The can smelled like paint thinner to Jones and the can is labeled paint thinner.

John E. Badtke, a forensic chemist for the Wisconsin Regional Crime Laboratory testified that he tested the vapors from the can and found them to be consistent

with paint thinner, a flammable combustible liquid with a low flash point.

Jameson, the instrument repairman, testified that paint thinner might have been seen around the store. Jameson used paint thinner at his Milwaukee repair shop to thin sealing solutions, but not at the Racine store. Jameson also testified that carbon tetrachloride and shellac solvent were used by repairmen in the store.

Frank Shovers, the owner of the building, testified that there was a large lot in back of the building and that people threw ". . . stuff in there, cans of beer, cans, and paint cans and all kinds of stuff. But Mr. Berby kept it pretty clean."

The complaint alleged that Berby's business had been declining, that he wanted to relocate the business and that he had increased the insurance on the contents of the building from $50,000 to $60,000 and had increased the business interruption insurance from $8,000 to $16,000. This increase in coverage was made at the regular renewal date at the suggestion of his insurance agent. In light of rising prices the increase in coverage was considered good insurance practice and not excessive by the insurance agent.

Frank Shovers stated that Mr. Berby was always current and prompt with his rent. He always paid his employees on time. Erv Johnson testified that piano and organ sales were declining and that Mr. Berby had spoken of relocating the store two years earlier but Johnson had no access to the corporate records and based his sales opinion solely on his experience as a salesman. Mr. Berby told Jones that sales and lesson business were declining somewhat, but that he was solvent and free of debt.

Mr. Berby denied starting the fire when talking with officer Roberts after the fire.

In an order dated March 15, 1977, Judge Francis Wendt dismissed the complaint because there was insuf-

ficient evidence to "show within reasonable probabilities that the fire of November 2, 1976 was of incendiary origin or that it was started by the defendant."

*What Standard Of Review?*

A defendant may be bound over for trial when the evidence at the preliminary hearing is sufficient to establish probable cause that a crime has been committed and that the defendant probably committed it.[3]

The probable cause that is required for a bindover is greater than that required for the issuance of an arrest warrant, but guilt beyond a reasonable doubt need not be proven.[4]

A defendant may not be bound over for trial unless it appears to a reasonable probability that a crime has been committed and that the defendant committed it. *Vigil v. State,* 76 Wis.2d 133, 141, 250 N.W.2d 378 (1976).[5]

The attorney general argues that even after the trial court has found insufficient evidence for a bindover at the preliminary hearing and the case is appealed, this court should apply the same standard, the standard of reasonable probability, in determining whether the trial court finding was erroneous.[6]

---

[3] Sec. 970.03(1), Stats., *Court v. State,* 51 Wis.2d 683, 188 N.W.2d 475 (1971).

[4] *State v. Knoblock,* 44 Wis.2d 130, 134, 170 N.W.2d 781 (1969); *State v. Williams,* 47 Wis.2d 242, 248, 177 N.W.2d 611 (1970).

[5] In accord, *State v. Olson,* 75 Wis.2d 575, 584, 250 N.W.2d 12 (1976); *Taylor v. State,* 55 Wis.2d 168, 197 N.W.2d 805 (1972).

[6] The attorney general also contends that the *Janasky, supra* standard might be more workable where the trial court decided the evidence didn't warrant a bindover. According to this approach, the standard of evidentiary review would be different depending on whether the bindover was ordered or not. We disagree. The standard of review is the same regardless of who prevails at the preliminary hearing.

The attorney general interprets *State v. Janasky*, 258 Wis. 182, 183, 45 N.W.2d 78 (1950) to support his argument, but since *Janasky*, this court has decided *State v. Olson*, 75 Wis.2d 575, 250 N.W.2d 12 (1976) and *State ex rel. Hussong v. Froelich*, 62 Wis.2d 577, 215 N.W.2d 390 (1974). Those cases state that in reviewing a finding of sufficiency of the evidence at the preliminary hearing.

"The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence."[7] *Hussong* at 62 Wis.2d 583, *Olson* at 75 Wis.2d 584.

The approach suggested by the attorney general would require this court to review *ab initio* the sufficiency of the evidence at a preliminary hearing. This court does not make that kind of evidentiary review. Regardless of who prevails at the preliminary hearing we will only review the record enough to determine whether

". . . there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, . . ."

---

[7] This approach is analogous to other standards of evidentiary appellate review whereby this court will only overturn the trial court if the finding is against the great weight and clear preponderance of the evidence. *Stueck v. LeDuc*, 57 Wis.2d 735, 741, 205 N.W.2d 139 (1973). The great weight and clear preponderance of the evidence test is applied not only in final fact determinations by the trial court, but also in reviewing findings of fact at a suppression hearing or at a hearing on a motion to withdraw a guilty plea. *Kelly v. State*, 75 Wis.2d 303, 249 N.W.2d 800 (1977); *Martinkoski v. State*, 51 Wis.2d 237, 243, 186 N.W.2d 302 (1971).

*Sufficiency Of The Evidence.*

To prove the crime of arson, the state must show that the fire was caused by a criminal agency and that the defendant was responsible for the fire. *State v. Kitowski,* 44 Wis.2d 259, 261, 170 N.W.2d 703 (1969). Sec. 943.02 (1) (a), Stats. (1975). The record in this case shows that if the fire was started by a criminal agency, then the court could have found that there was a reasonable probability that Mr. Berby was the agent. But, there was competent evidence to support the trial court determination that the fire did not have an incendiary origin.

The state's proof of criminal agency relied heavily on the testimony of investigator Jones that the fire started in the east storage room because the room and roof above it were severely damaged, that there was a low amount of combustible materials and an odor similar to paint thinner in the room and that the concrete floor had flaked.[8] The trial court might have differed with Jones' opinion for a number of reasons.

The most serious flaw in Mr. Jones' reconstruction of the fire is the testimony concerning holes in the roof. His theory was based on the conclusion that the fire started in the east storage room and that there wasn't sufficient fuel to keep an accelerated fire going in that room. Mr. Jones identified the east storage room as the origin because, among other reasons, the roof was consumed above that room.

Racine fireman, James Markusen opened a hole in the roof directly above the origin of the fire. He testified that this hole was over the southwest corner of the building. Mr. Jones testified that the holes in the roof above the east storage room were not in the southwest part of the roof.

[8] The combustible materials in the room included a wooden door, wooden shelves, studding, firring strips and two violin cases.

The attorney general argues that this discrepancy was an honest mistake by Markusen and that Jones' testimony is supported by fireman Prothero. Nevertheless, the Jones origin theory is also contradicted by Lt. Boehme who testified that three holes were opened on the roof. One hole was over the southeast corner where no fire was found. Lt. Boehme stated that two other "hot spots" were opened, one of which was directly over the fire. The hole over the fire was near a ventilator, the other was to the east of the first hole. One of these latter two holes was in the west central portion of the roof. If the hole near the ventilator was in the west central portion of the roof, that placed the origin of the fire in the west central portion of the building away from the east storage room. If the hole to the east of the ventilator was in the west central portion of the roof, that puts the hole near the ventilator, and the origin of the fire, even further to the west.

Jones' opinion that the fire was a deliberate act was based on his conclusion that the fire started in the east storage room. That conclusion is contradicted by the testimony of Boehme and Markusen. That testimony was competent evidence for the judicial mind of the examining magistrate to act on in determining that the fire was not started by a criminal agency.

*Motive.*

The attorney general contends that the trial court erred in requiring the state to prove motive, *State v. Janasky, supra.* Motive is not an element of any crime and it does not by itself establish guilt or innocence. But evidence of motive is relevant if it meets the same standards of relevance as other evidence. Motive is an evidentiary circumstance which may be given as much weight as the fact finder deems it entitled to. *Kelly v. State,* 75 Wis.2d 303, 318–320, 249 N.W.2d 800 (1977); *Wittig v. State,* 235 Wis. 274, 280, 292 N.W. 879 (1940).

There is no showing in the record that the trial court gave this evidence of motive any improper weight. The trial court relied partially on Berby's lack of motive in finding a lack of probable cause, but the court never stated that the prosecution was required to prove motive.

*By the Court.*—Order affirmed.