STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Roger W. WILLIAMS, Defendant-Respondent.
[Case No. 79–1985–CR.]

STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Stephen PSZENICZKA, Defendant-Respondent.
[Case No. 79–1986–CR.]

Supreme Court

*Argued September 10, 1981.—Decided October 6, 1981.*

(Also reported in 310 N.W.2d 601.)

---

16

For the petitioner the cause was argued by *Chris Hei-kenen,* assistant attorney general, with whom on the brief

was *Bronson C. La Follette,* attorney general. [Case No. 79–1985–CR.]

For the respondent there was a brief and oral argument by *Jack E. Schairer,* senior assistant state public defender. [Case No. 79–1985–CR.]

For the petitioner the cause was argued by *Chris Heikenen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general. [Case No. 79–1986–CR.]

For the respondent there was a brief and oral argument by *Daniel W. Linehan* of Madison. [Case No. 79–1986–CR.]

BEILFUSS, C. J. This is a review of a decision of the court of appeals affirming a dismissal of criminal charges against the defendants based upon a finding by ANGELA B. BARTELL, Judge, that the state had failed to show probable cause at the preliminary hearing.

The complaint charged defendant Roger W. Williams with forgery under sec. 943.38(2), Stats., and charged defendant Stephen Pszeniczka with forgery and with being a party to the crime of uttering a forged check in violation of sec. 939.05(2)(b). After a preliminary hearing, the trial court ordered the matter dismissed, finding only that "the state has not met its burden of showing probable cause to believe that the defendants have probably committed felonies."

The testimony at the preliminary hearing established that defendant Pszeniczka entered the First Wisconsin Bank at Hilldale in Madison at 9:30 to 10:00 a.m., on Saturday, September 22, 1979. He approached a teller, Terri Linden, whom he knew from previously working with her at a Pizza Hut restaurant. He asked her if he could cash a business check and "how big it could be." She told him the check could be for any amount as long as proper identification was presented. He then left the bank.

Approximately 45 minutes later, defendant Williams entered the bank and approached the same teller. Williams asked her if she had spoken with "Steve." When she replied that she had, he presented a check made out to "cash" in the amount of $950. The check was signed "Anthony Shomberg" and drawn on his account. Linden compared the signature on the check with Shomberg's signature on file in the bank. She decided the signatures did not match. She returned the check to Williams, telling him that she could not cash it because of the amount and suggesting that he see a personal banker.[1] Williams then left the bank without talking to anyone else.

Two hours later Williams and Pszeniczka entered the bank together. Linden was in the back of the bank and remained there because she was afraid they would try to present the check again. Pszeniczka approached a personal banker and asked if she had found any car keys. She said that she had not and suggested he leave his name and telephone number. He gave his name as "Steve Puccio."

Two days later, Monday, September 24, Linden received a telephone call at work from Williams. He asked for her by her maiden name, Terri Urban. She had not been married when she worked with Pszeniczka at Pizza Hut. Pszeniczka apparently remembered her by her maiden name. Williams asked if he could come in and cash his check and she responded that he could. He asked if she would be in between 4:30 and 6:00 p.m. Linden replied that she would be at the bank during that time. Shortly after 4:30, Williams entered the bank, approached Linden's window and presented a $500 check made out to cash, drawn on Shomberg's account. It was not the same check he had presented on Saturday, but it

---

[1] A personal banker, for the purposes of this action, is a bank employee who opens new accounts, authorizes checks and handles similar customer matters.

was the same type and again the signature did not match Shomberg's signature. Linden had alerted the police earlier and they arrested Williams while he waited at the teller's window. An officer went outside to look for Pszeniczka. He found him parked in a car approximately 150 feet from the bank. The officer was dressed in civilian clothes, but he displayed his badge and his gun and identified himself in a loud voice to Pszeniczka. He knocked on the car window on the driver's side, referred to Pszeniczka by name and ordered him out of his car. After a brief pause, Pszeniczka put the car in gear and moved forward approximately two feet, but another car and the curb blocked his progress. The officer again ordered him to stop which he did. Pszeniczka put the car in park and the officer turned the motor off and removed the keys. After being placed under arrest, Pszeniczka responded to the officer's question by stating that he had not been in the Hilldale Bank. It is not clear from the record whether he meant that he had never been in the bank or simply that he had not been in the bank on the day of his arrest.

On September 22d, after Williams had initially tried to cash the $950 check, the bank called Anthony Shomberg to ask him if any of his checks were missing. He reported that three checks and his wristwatch were missing. The $500 check that Williams attempted to cash was identified as one of the missing checks. Shomberg testified that he had not made out or signed the check, nor given anyone else permission to sign his checks. Shomberg's watch was found on Williams' person when he was arrested.

Shomberg did not know Williams, however he did have prior contacts with Pszeniczka. Pszeniczka had worked at Shomberg's house installing carpeting. He finished work on September 16 or 17. Shomberg had informed a third party that the key to his house would be under the

doormat at certain times for the convenience of the laborers working on the house. Pszeniczka was standing beside Shomberg when he mentioned leaving the key under the mat. In addition to the third party, Shomberg testified that he believed only Pszeniczka and two other people knew about the key hidden under the mat.

Shomberg stated that the watch and the checks must have been taken on September 21. Only the plumber and the heating man were supposed to be in the house that day; Pszeniczka had finished working at the house on September 16 or 17. However, the key was left out under the mat after dark on September 21.

Based on a record containing these essential facts, Judge Bartell denied a bind over. Her order gave no reasons, merely concluding that the State had not met its burden of showing probable cause. The court of appeals affirmed, with Judge Foley dissenting.

The initial determination on this appeal is what standard we must use to review the decision of Judge Bartell. The court of appeals based its decision on the following language in *State v. Berby,* 81 Wis. 2d 677, 684, 260 N.W. 2d 798 (1978) :

" 'The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence.' "

The court of appeals thus limited its inquiry to a search for "competent evidence for the judicial mind of the examining magistrate to act on." It refused to independently determine whether the evidence established a reasonable probability that the defendants committed a felony.

The test cited in *Berby* is the appropriate standard of review in most such cases, but not in cases where the principal facts are undisputed or in cases where the examining magistrate fails to make any findings of fact. The language used in *Berby* was derived from *State ex rel. Durner v. Huegin,* 110 Wis. 189, 237, 85 N.W. 1046 (1901). In *Durner* the court formulated the rule that a reviewing court can only look to whether there was substantial ground for the exercise of judgment by the committing magistrate. This test has been regularly employed by this court in reviewing determinations of probable cause.[2] As we said in *Berby,* this approach is analogous to other standards of evidentiary appellate review, whereby this court will only overturn the trial court if the finding is against the great weight and clear preponderance of the evidence. *Berby, supra,* 81 Wis. at 684, n. 7. However, this approach is not applicable in cases where the principal facts are undisputed nor is it applicable where the trial judge or examining magistrate failed to make findings of fact.[3]

Both these rules represent well recognized exceptions to the general standard of review by appellate courts of findings of fact by trial courts. When the principal facts and the only reasonable inferences are undisputed, as is true in the present case, this court is not bound by the findings of fact of the lower courts. As we stated in *Chicago, Milwaukee, St. Paul & P. RR. Co. v. Milwaukee,* 47 Wis. 2d 88, 96, 176 N.W.2d 580 (1970) :

"When the principal facts in a case are undisputed and the controversy centers on what has been called ultimate

[2] *See, e.g., State ex rel. Hussong v. Froelich,* 62 Wis. 2d 577, 583, 215 N.W.2d 390 (1974), and *State v. Olson,* 75 Wis. 2d 575, 584, 250 N.W.2d 12 (1977).

[3] We reject, however, the state's argument that the standard of review should differ depending on whether a bind over is ordered or denied. The state made the same argument in *Berby* and we also rejected it in that case, 81 Wis. 2d, *supra,* at 683, n 6.

conclusions of fact, or conclusions of law, this court has indicated it will not be bound by the findings of the trial court. *Dairy Queen of Wisconsin, Inc. v. McDowell* (1952), 260 Wis. 471, 474, 51 N.W.2d 34, 52 N.W.2d 791."

A similar rule applies when the trial court fails to make findings of fact:

"We pointed out in *Skibinski* that when there is a failure to make a finding of fact, this court on appeal may adopt one of three courses: (1) Affirm the judgment if clearly supported by the preponderance of the evidence, (2) reverse if not so supported, or (3) remand for the making of findings and conclusions." *Walber v. Walber,* 40 Wis. 2d 313, 319, 161 N.W.2d 898 (1968).

Therefore, this court may examine the factual record *ab initio* and decide as a matter of law whether the evidence constitutes probable cause.[4] We have no difficulty finding ample evidence to hold probable cause did exist to believe a felony had been committed and that the defendants probably committed the crimes with which they were charged.

Sec. 970.03(1), Stats., states that, "A preliminary examination is a hearing before a court for the purpose of determining if there is probable cause to believe a felony has been committed by the defendant." Previous cases have spelled out what is meant by "probable cause." In *Berby,* this court stated that, "The probable cause that is required for a bindover is greater than that required for the issuance of an arrest warrant, but guilt beyond a reasonable doubt need not be proven."[5] There must be a

---

[4] We note that this court undertook a similar review of the undisputed evidence in a case involving the existence of probable cause in *Wittke v. State ex rel. Smith,* 80 Wis. 2d 332, 350, 259 N.W. 2d 515 (1977).

[5] *State v. Berby,* 81 Wis. 2d 677, 683, 260 N.W.2d 798 (1978).

"reasonable probability" that a crime has been committed and that the defendant committed it.[6]

In this case we must examine the evidence against each of the defendants individually to determine whether the state established a reasonable probability that they committed the crimes. Williams was charged with uttering a forged check, contrary to sec. 943.38(2), Stats.[7] This crime has two elements:

"[F]irst, that the person utter as genuine . . . any forged writing, and second, that the person know that the writing has been falsely made or altered, sec. 943.38(2), Stats." *Johnson v. State,* 53 Wis. 2d 787, 791, 193 N.W.2d 659 (1972).[8]

There is no question that Williams attempted to cash a forged check. The only issue is whether the evidence suf-

---

[6] *Vigil v. State,* 76 Wis. 2d 133, 141, 250 N.W.2d 378 (1977).

[7] Sec. 943.38, Stats., reads in relevant part:

"943.38 **Forgery.** (1) Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, is guilty of a Class C felony:

"(a) A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights; or

"(b) A public record or a certified or authenticated copy thereof; or

"(c) An official authentication or certification of a copy of a public record; or

"(d) An official return or certificate entitled to be received as evidence of its contents.

"(2) Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, is guilty of a Class C felony."

[8] *See* Black's Law Dictionary, 4th Ed., p. 1716:

"UTTER, . . .

"To utter, as used in a statute against forgery and counterfeiting, means to offer, whether accepted or not, a forged instrument,

fices to show probable cause that Williams knew the check was forged. We conclude as a matter of law that the record in this case is sufficient to show probable cause that Williams did have such knowledge. He attempted to cash a stolen, forged check on two different occasions. He was also found in possession of the watch which was stolen from Shomberg's house along with the checks. Such unexplained possession of stolen property raises a rebuttable presumption of guilt and passes the burden of explaining how he received the property to the defendant.[9] No explanation has been offered and, given the highly suspicious facts in this case, it is difficult to imagine a plausible explanation. Probable cause requires a reasonable probability of guilt, which is certainly satisfied with regard to Williams.

The evidence is equally strong regarding Pszeniczka. He was charged both with uttering a forged check and with intentionally aiding and abetting the commission of the crime, in violation of sec. 939.05(2)(b), Stats.[10] There are two elements of the crime of aiding and abetting:

" '[U]ndertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he

with the representation, by words or actions, that the same is genuine. . . ."

[9] *Peters v. State,* 70 Wis. 2d 22, 34, 233 N.W.2d 420 (1975), citing *State v. Johnson,* 11 Wis. 2d 130, 139, 104 N.W.2d 379 (1960).

[10] Sec. 939.05, Stats., reads in relevant part:

"939.05 **Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it."

consciously desires or intends that his conduct will yield such assistance.' " *State v. Asfoor,* 75 Wis. 2d 411, 427, 249 N.W.2d 529 (1977).

Ample evidence was brought forth at the hearing to tie Pszeniczka and Williams together and to establish a reasonable probability that Pszeniczka aided and abetted the uttering of the forged check. Pszeniczka initially approached the teller and asked questions about check cashing requirements and procedures. When Williams later tried to cash the $950 check, he first asked if the teller had already talked to "Steve." Later, on September 22, Williams and Pszeniczka entered the bank together, but left when the teller, Linden, was not present. Pszeniczka gave a false name. When Williams telephoned Linden on September 24, he asked for her by her maiden name, which Pszeniczka and not Williams would have known. Pszeniczka was one of only four people who knew where the key to Shomberg's house was hidden. When the checks and watch were missing, they were found in the possession of Williams. The inferences linking Pszeniczka and Williams to the theft of Shomberg's checks and his watch are very strong. Added to all this is the fact that Pszeniczka was found parked outside the bank when Williams was arrested for trying to pass the forged check.

In summary, as to both defendants, the only reasonable inferences from the evidence at the preliminary examination clearly established that there was probable cause to believe the felony charged had been committed and that the defendants did it.

*By the Court.*—Reversed and remanded to the trial court for further proceedings.