State of Wisconsin, Plaintiff-Respondent,
v.
Robert S. Quinlan, Defendant-Appellant.
2007AP599-CR.
Court of Appeals of Wisconsin, District II.
August 22, 2007
¶ 1 NETTESHEIM, J.[1]
A jury found Robert S. Quinlan guilty of two counts of fourth-degree sexual assault and one count of exposing his genitals to a minor. Quinlan's then seventeen-year-old stepdaughter was the victim of the offenses. Quinlan appeals from the judgment of conviction. He contends that the trial court misused its discretion when admitting other acts evidence and a portion of a statement he gave to the police. We uphold the trial court's evidentiary rulings and therefore affirm the judgment of conviction.

BACKGROUND
¶ 2 The criminal complaint charged Quinlan with two counts of fourth-degree sexual assault pursuant to WIS. STAT. § 940.225(3m) and one count of exposing his genitals to a child for purposes of sexual arousal or gratification pursuant to WIS. STAT. § 948.10(1). The alleged victim was Ashley M., Quinlan's then seventeen-year-old stepdaughter.[2] All of the offenses were alleged to have occurred between March 1 and August 31, 2004. Besides the charged offenses, the complaint recited other sexually related episodes that occurred between Quinlan and Ashley. In addition, the complaint alleged an episode in 2005 when Quinlan, his wife, and Ashley smoked marijuana.
¶ 3 Quinlan brought a motion in limine seeking to exclude this "other acts" evidence and a portion of an oral statement he gave to the police. The trial court denied the motion. At the ensuing jury trial, the jury found Quinlan guilty of all three counts. Quinlan appeals, challenging the court's evidentiary rulings.

DISCUSSION
¶ 4 The "other acts" evidence consisted of the following:
Quinlan had always taken an interest in Ashley and would follow her into her bedroom and watch her;
Quinlan had asked Ashley whether she shaved "there," referring to her vaginal area, and he wanted to "see it";
Ashley would come downstairs in the morning to go to school and Quinlan would be standing in the kitchen with his robe open with a full erection;
Quinlan called Ashley at work and told her that he had a dream that he had "eaten her out" and the dream involved her "cuming on his face";
During rides to school, Quinlan would try to hold Ashley's hand or ask for a kiss when she got out of the car;
Quinlan would massage Ashley's back and his hands would go up under her shirt;
Quinlan had an obsession with feet and told Ashley that he would "cum over the sight of her feet";
Quinlan would grab Ashley's buttocks;
Quinlan would talk with Ashley about his sex life with Ashley's mother;
When Quinlan would hug Ashley, his hands touched and fondled her breasts;
Quinlan would walk out of the bathroom to his bedroom completely nude, timing these events when Ashley was present;
Quinlan would walk in on Ashley while she was using the bathroom and would stare at her;
In Ashley's presence, Quinlan once sniffed the crotch area of a pair of Ashley's underwear;
Quinlan had once smoked marijuana with Ashley and her mother.
¶ 5 WISCONSIN STAT. § 904.04(1) bars evidence of a person's character or character trait for the purpose of proving that the person acted in conformity therewith. Likewise, § 904.04(2) bars evidence of a person's other crimes, wrongs, or acts for such purpose. However, § 904.04(2) goes on to permit the use of other acts evidence "when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
¶ 6 In State v. Sullivan, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998), the supreme court set out the three-step analysis a court must conduct when faced with an other acts question. First, the court looks to whether the evidence is offered for an acceptable purpose under the exceptions set out in WIS. STAT. § 904.04(2). However, the list of these exceptions is not exclusionary, but, rather, illustrative. State v. C.V.C, 153 Wis. 2d 145, 162, 450 N.W.2d 463 (Ct. App. 1989). Thus, the law permits the use of other acts evidence when it furnishes part of the context of the crime or is necessary to a full presentation of the case. Id. See also State v. Shillcutt, 116 Wis. 2d 227, 236, 341 N.W.2d 716 (Ct. App. 1983), aff'd, 119 Wis. 2d 788, 350 N.W.2d 686 (1984). If the other acts evidence qualifies under any of the exceptions, the court moves to the second step and determines if the evidence is relevant under Wis. Stat. § 904.01. Sullivan, 216 Wis. 2d at 772. If so, the court moves to the final step and determines whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence under WIS. STAT. § 904.03. Sullivan, 216 Wis. 2d at 772-72.
¶ 7 We review a trial court's evidentiary rulings under the discretionary standard of review. State v. Veach, 2002 WI 110, ¶55, 255 Wis. 2d 390, 648 N.W.2d 447. "An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." Sullivan, 216 Wis. 2d at 780-81. However, if a trial court fails to fully explicate its discretionary ruling, an appellate court may nonetheless uphold the ruling under the independent review doctrine, which permits the reviewing court to examine the record and determine if it contains facts which would support the trial court's decision. See id.
¶ 8 Against these legal principles, we turn to this case.

The Sexually Related Episodes
¶ 9 The first thirteen of the fourteen episodes recited above all involve sexually related conduct or speech by Quinlan with Ashley. We address these in a single discussion. We address the final episodethe "marijuana episode";separately because it is the only event that is not sexually related in terms of Quinlan's conduct or speech.
¶ 10 The first and second steps of an other acts inquiry answer whether the evidence qualifies under any of the exceptions set out in WIS. STAT. § 904.04(2) and, if so, whether the evidence is relevant under WIS. STAT. § 904.01. See Sullivan, 216 Wis. 2d at 772-73. We address these two steps in a combined discussion because, under the facts of this case, the factors bearing on each are essentially the same.
¶ 11 The trial court held that these events were admissible under the statutory exceptions for motive, intent, and absence of mistake. In addition, the court ruled that the evidence was admissible to show the context of the alleged crimes. We agree, particularly as to the matter of context. All of the other acts episodes occurred between Quinlan and Ashley. All reveal, or reasonably imply, Quinlan's sexual attraction to Ashley and his efforts to pursue her for purposes of sexual gratification. The trial court hit the nail on the head when it said that the evidence "may go to the very heart of the relationship between Mr. Quinlan and Ashley under the circumstances." We fully endorse this comment. This pattern of conduct by Quinlan vis-à-vis Ashley was important and relevant background information which the State was entitled to put before the jury. Were it otherwise, the jury would be assessing the alleged offenses in a vacuum. As noted, the law authorizes other acts evidence in such a situation. See State v. C.V.C., 153 Wis. 2d at 162.
¶ 12 For the same reasons, we conclude that the trial court also properly admitted the evidence under the exceptions for intent, motive and absence of mistake. Sexual contact performed for purposes of sexually arousing the defendant is fourth-degree sexual assault. Wis. Stat. §§ 940.225(3m) and 940.225(5)(b)1. Quinlan's other acts conduct revealing his sexual pursuit of Ashley was relevant, perhaps even necessary, for the State to prove that his conduct as to the charged offenses was intended for purposes of his sexual arousal.
¶ 13 For the same reason, the other acts evidence was properly admitted under the motive exception. The supreme court has approved the use of other acts evidence to show motive. See State v. Hunt, 2003 WI 81, ¶60, 263 Wis. 2d 1, 666 N.W.2d 771, and State v. Plymesser, 172 Wis. 2d 583, 593-95, 493 N.W.2d 367 (1992). Motive generally is not an element of a criminal offense. State v. Berby, 81 Wis. 2d 677, 686, 260 N.W.2d 798 (1978). Nonetheless, it can be a highly relevant factor in many cases. See Plymesser, 172 Wis. 2d at 593-95. This is particularly so in sexual assault cases where the State contends that the purpose of the conduct is to obtain sexual gratification. Id. Finally, the evidence counters any suggestion that Quinlan's conduct, particularly as to the exposure charge, may have been accidental.
¶ 14 That brings us to the third step of an other acts analysiswhether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence under Wis. Stat. § 904.03. Quinlan focuses on the "unfair prejudice" aspect of this inquiry.
¶ 15 The mere fact that the evidence is prejudicial does not govern this inquiry. Rather, the prejudice must be "unfair" and the danger of unfair prejudice must substantially outweigh the probative value of the evidence. See Sullivan, 216 Wis. 2d at 772-73. A respected evidence commentator has noted that in this step of the inquiry, the exception is "biased ... in favor of admissibility. [WISCONSIN] STAT. § 904.03 requires that the other act evidence must be admitted unless the trial court, in its discretion, determines that the probative value is substantially outweighed by the other considerations." 7 DANIEL D. BLINKA, WISCONSIN PRACTICE: EVIDENCE § 404.6 at 152 (2001). We have already noted that this evidence was highly relevant, perhaps even necessary, for the State to meet its burden of proof on the element of sexual arousal. Also as noted, the evidence traveled to the heart of the relationship between Quinlan and Ashley, and the jury was entitled to that background information in order to properly assess the charged offenses in the proper context. In Plymesser, the supreme court approved the admission of other acts evidence that was "enormously prejudicial" but also was "extremely relevant." Plymesser, 172 Wis. 2d at 587. Here, assuming arguendo that the other acts evidence was "enormously prejudicial," we nonetheless conclude for the reasons already expressed that the evidence was highly probative, highly relevant, and highly informative to the jury.
¶ 16 We uphold the trial court's evidentiary ruling permitting the State to use the evidence of Quinlan's sexually related conduct and speech.[3]

The "Marijuana Episode"
¶ 17 The trial court also permitted the State to introduce evidence of the event when Quinlan, his wife, and Ashley smoked marijuana. The court's bench ruling, while otherwise complete, did not discriminate between this episode and the episodes we have already discussed. However, under the independent review doctrine, we are permitted to review the record in order to determine whether the court's ultimate ruling allowing the evidence is correct. See Sullivan, 216 Wis. 2d at 780-81.
¶ 18 This is a closer question than that presented by the other acts evidence we have already discussed because this event did not directly involve any sexual conduct or speech by Quinlan. In addition, unlike the other events, this event included Quinlan's wife. Nonetheless, we are persuaded by the State's argument that this evidence was relevant to demonstrate the relationship Quinlan was attempting to build with Ashley. The prosecutor put this evidence in its proper context in closing argument:
And why do we even bring that up? That's not brought up because the state is trying to show because there was a pipe or he smoked marijuana that he's a bad person, you should convict him. It's only important in the sense that this is a particular stepfather that used that friendship. He built that friendship, wanted to be her buddy. That's the kind of thing a friend might do, not a stepfather. And he did it to the point where he got her comfortable with sexual conversation. He got her comfortable with things he was doing, being her friend, and then he intended and did sexually abuse her, expose himself. (Emphasis added.)
¶ 19 This event demonstrated Quinlan's efforts to solicit Ashley's confidence and trust by involving her in illegal activity, a matter that presumably would remain private and confidential between the two because of the potential criminal consequences if that trust was ever breached. With that trust in place, Quinlan could more easily, and with less risk of exposure, continue his sexual pursuit of Ashley. Importantly, the prosecutor cautioned the jury to not use this evidence for an improper purpose and to not convict simply because Quinlan had engaged in the conduct.
¶ 20 For these reasons, we conclude that this evidence, like the sexually related episodes, was relevant to Quinlan's intent and motive and also to the context of the relationship between him and Ashley. We also conclude that the probative value of this event was not substantially outweighed by the risk or danger of unfair prejudice.[4]
¶ 21 Even if the evidence of this event was improperly admitted, we hold that the error was harmless. The test for harmless error is whether a rational jury would have found the defendant guilty absent the error. See Hunt, 263 Wis. 2d 1, ¶77. The other evidence in support of the jury's verdict was substantial. The prosecutor did not refer to this event during the opening statement, and the only reference in the closing argument was that noted above. And that reference was only to show the context of the relationship Quinlan was attempting to build with Ashley, not to suggest that the jury should convict because of the intrinsic criminal nature of the conduct itself. To the contrary, the prosecutor admonished the jury to not convict on this basis. We see no reversible error.

Quinlan's Statement To The Police
¶ 22 During the investigation of this matter, the police questioned Quinlan a number of times. During one of these interviews, Quinlan stated that "he wanted to have a girl first and a boy second so the male son could have sex with his older sister's friends so that they would teach him how to have sex correctly." Quinlan sought to bar the State from using this statement, contending that the probative value of the statement was substantially outweighed by considerations of unfair prejudice under Wis. Stat. § 904.03.[5] The trial court denied the motion.
¶ 23 Viewed in isolation and at first blush, the relevance of this statement reasonably could be questioned. But when measured against the facts of this case, that concern rapidly dissipates and the relevance of the evidence clearly emerges. First, Ashley testified that Quinlan told her that he would "teach her" how to have sex. Second, Ashley also testified that Quinlan told her that Ashley's boyfriend would not know how to have sex correctly. Her testimony on this topic was the following:
He would just tell me that [my boyfriend] would never be able to please me sexually. And that I needed an older man to do so for me. And that I would never be able to be satisfied with [my boyfriend].
....
He said that hethat I would need someone older, more mature, like himself to be able to teach me how to do that, and teach me how to pleaseto please me.
....
He said that he thought we were really close, and that he loved and cared about me. He said that wewe were so close that he could picture us having sex.
¶ 24 Like the other acts evidence we have already approved, this evidence represents still more of Quinlan's attempt to pursue Ashley sexually and to "groom" her in the hope of future sexual conduct with her. Unlike Ashley's boyfriend, Quinlan viewed himself as sexually experienced and therefore qualified and eligible to educate Ashley on the topic. So also with a son who would be similarly taught by friends of an older daughter. When considered in light of the total circumstances of this case, we hold that this evidence was highly relevant to Quinlan's motive for sexual gratification from Ashley and that the probative value of the evidence was not outweighed by the danger of unfair prejudice.
¶ 25 We uphold the trial court's evidentiary rulings. Therefore, we affirm the judgment of conviction.
By the Court.Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2005-06). All references to the Wisconsin Statutes are to the 2005-06 version unless otherwise noted.
[2] The two counts of fourth-degree sexual assault were based on the following two episodes: (1) Quinlan touched Ashley's vaginal area while she was standing on a stool cleaning her closet; and (2) while rubbing Ashley's foot, Quinlan placed her foot over his clothing on his erect penis. The count of exposing his genitals to a child was based upon an event when Quinlan wakened Ashley for breakfast while wearing only a bathrobe open in the front, revealing his fully erect penis.
[3] Quinlan also complains that the trial court made a generic ruling covering all of the other acts episodes instead of addressing each episode individually. We reject this argument. All of the sexually related episodes were of the same ilk, demonstrating Quinlan's sexual pursuit of Ashley. In order to answer Quinlan's challenge to these thirteen episodes, it was not necessary for the trial court to address each one individually. Nor is it necessary for us to do so. Our analysis tracks that of the trial court as to these events.
[4] Quinlan also contends that this evidence was inadmissible because this event occurred after the charged offenses. However, other acts evidence is admissible regardless of whether it occurred before or after the charged offense. State v. Roberson, 157 Wis. 2d 447, 455, 459 N.W.2d 611 (Ct. App. 1990).
[5] Quinlan also sought to suppress his statements to the police on Miranda grounds. The trial court rejected this challenge, and Quinlan does not pursue this aspect of the motion to suppress on appeal. See Miranda v. Arizona, 384 U.S. 436 (1966).